[No. S107521. July 7, 2003.]

MIGUEL FERNANDEZ, Plaintiff and Appellant, v.
TRUMAN W. LAWSON, JR., et al., Defendants and Appellants.

**COUNSEL**

Homampour & Associates and Arash Homampour for Plaintiff and Appellant.
Ropers, Majeski, Kohn & Bentley, Michael J. Brady, Elisa Nadeau; Wait &
Childs and James W. Colfer for Defendants and Respondents.

**OPINION**

**BROWN, J.**—Is a homeowner who hires someone to trim a tree in his yard
required to comply with the California Occupational Safety and Health Act of
1973 (OSHA) (Lab. Code, § 6300 et seq.)[1] tree trimming regulations? The
question is presented under the somewhat unusual circumstances of this case.

Eliseo Lascano, doing business as Anthony's Tree Service (ATS), offered
and was hired to trim an approximately 50-foot palm tree in defendants

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

Truman and Gaile Lawsons' (Lawson) yard for $450. Lawson was not aware a contractor's license was required to trim a tree measuring 15 feet or more (Bus. & Prof. Code, § 7026.1, subd. (c)), and in fact, neither ATS nor plaintiff Miguel Fernandez was licensed. Unless Fernandez is estopped from denying ATS's independent contractor status because of any licensing misrepresentations Lascano may have made to Lawson, the parties assume Fernandez is deemed Lawson's employee by operation of Labor Code section 2750.5.[2] That is because ATS was an unlicensed contractor and the tree trimming at issue required a license. (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 12–16 [219 Cal.Rptr. 13, 706 P.2d 1146] [Lab. Code, § 2750.5 makes an unlicensed contractor who is performing work for which a license is required an employee of the hirer of the unlicensed contractor, for purposes of workers' compensation].)

We therefore confront two issues in this case. First, must a homeowner who is an employer solely by virtue of section 2750.5 comply with OSHA tree trimming regulations, or is such tree trimming a "household domestic service" excluded from OSHA? The Courts of Appeal are in conflict on this issue. Second, may an unlicensed contractor's employee be estopped from claiming that he is the employee of the homeowner if he personally made no misrepresentations concerning the contractor's license status?

The Court of Appeal concluded tree trimming was not a household domestic service under the circumstances of this case, and that an unlicensed contractor's employee may be estopped by the contractor's licensing misrepresentations. We disagree on the first issue, and hence need not address the second.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Fernandez, who had worked for ATS for two years and had at least four years' experience trimming trees, was assigned to trim Lawson's tree. Fernandez fell from the tree during the trimming, sustaining serious injury. He sought workers' compensation benefits from Lawson. Lawson's homeowner's insurer, not a party to this action, denied the claim on the ground Fernandez

---

[2] Section 2750.5 provides in part: "There is a rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, or who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor. Proof of independent contractor status includes satisfactory proof of [certain] factors: [¶] . . . [¶] In addition to the factors contained in subdivisions (a), (b), and (c), any person performing any function or activity for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code shall hold a valid contractors' license as a condition of having independent contractor status."

had not worked 52 hours and earned $100 in the 90 days preceding the injury, and thus did not fall within the statutory definition of an "employee" eligible for benefits. (§§ 3351, subd. (d), 3352, subd. (h).)

Fernandez then sued Lawson for damages, ultimately asserting as relevant here violation of various safety regulations enacted pursuant to OSHA.[3] Lawson moved for and was granted summary judgment on the ground that OSHA did not apply to noncommercial tree trimming at a private residence.

The Court of Appeal reversed, holding the "trimming of Lawson's 50-foot palm tree" was not a household domestic service "as a matter of law." It expressly disagreed with *Rosas v. Dishong* (1998) 67 Cal.App.4th 815, 826 [79 Cal.Rptr.2d 339] (*Rosas*) ("Legislature intended to exclude private residence yard maintenance work, including tree trimming, from OSHA coverage under the 'household domestic service' exclusion"). To determine whether tree trimming constituted "household domestic service" within the meaning of section 6303, and was thereby excluded from OSHA, the Court of Appeal reasoned, "the focus should be on the degree of skill or expertise involved and the training and competence required to safely and successfully perform the task. [¶] . . . [T]he test for whether a tree trimming qualifies as a household domestic service should be whether an average member of the household has the skill and competence to undertake the activity. Under this test, the task of tree trimming (depending on the size and type of the tree and number of trees involved) may sometimes, but not always, qualify as a household domestic service. Ultimately, determining whether an average homeowner possesses the skill and competence to trim a particular tree or trees is a question of fact which should be decided on a case-by-case basis."

---

[3] The tree work, maintenance, or removal regulations provide in part that "An accident prevention program shall be inaugurated and maintained"; "Each work location where tree trimming . . . is to be done, shall be under the direction of a qualified tree worker"; "Employees shall be trained and instructed in the hazards involved in their job assignments . . . [and] [s]uch training shall be documented by the employer"; "A job briefing shall be conducted by a qualified tree worker before each work assignment is begun"; "Prior to use, all equipment and safety devices shall be inspected"; "The employer shall establish rescue procedures and provide training in first-aid, cardiopulmonary resuscitation (CPR) and aerial rescue. First-aid and CPR training shall be performed by a certified instructor"; "Prior to climbing the tree, the tree shall be visually inspected to determine the safest method of entry into the tree"; "The climbing line must be crotched as soon as practicable after the employee is aloft, and a taut line-hitch tied and checked"; "The climbing rope shall be passed around the main leader or a major upright branch of the tree as high as necessary using branches with a wide crotch to prevent any binding of the safety rope. The crotch selected for tying-in shall be over the work area as nearly as possible, but located in such a way that a slip or fall would not permit the employee to come in contact with any electric conductor, equipment or other hazard. The rope shall be passed around the main leader or an upright branch, using a limb as a stop"; and "When working aloft, employees shall be required to wear tree workers' saddles and tie-in with an approved safety strap or rope." (Cal. Code Regs., tit. 8, §§ 3421, subds. (a)–(e), (j), 3427, subd. (a)(1)–(4); see generally *id.*, §§ 3420–3428.)

The court further held there were triable issues of fact as to whether Fernandez was bound by any alleged misrepresentation of Lascano concerning ATS's license status.

## II.  DISCUSSION

We first consider whether Lawson was required to comply with OSHA tree trimming regulations as Fernandez's statutory employer. (See § 6304.5.)

OSHA requires that "[e]very employer shall furnish employment and a place of employment that is safe and healthful for the employees therein." (§ 6400, subd. (a).) "Employment" is defined as including "the carrying on of any trade, enterprise, project, industry, business, occupation, or work . . . in which any person is engaged or permitted to work for hire, *except household domestic service*." (§ 6303, subd. (b), italics added.) The issue here is whether, as a matter of law, a tree trimmer hired by a homeowner for a noncommercial purpose is engaged in "household domestic service."

OSHA does not define "household domestic service." Nor does the relevant legislative history offer any guidance on the meaning of the phrase. While the current OSHA was enacted in 1973, it traces its roots to the 1913 "[W]orkmen's compensation, insurance and safety act." (Stats. 1913, ch. 176, § 1, p. 279.) In this act, "employment" excluded "persons [who] are employed solely in . . . household domestic services." (Stats. 1913, ch. 176, § 51, p. 305.) This same phrase, "household domestic service," consistently appears in all subsequent versions of the "employment" definition. (Stats. 1917, ch. 586, § 33, p. 861; Stats. 1919, ch. 471, § 10, p. 923; Stats. 1923, ch. 90, § 1, pp. 165–166; Stats. 1929, ch. 249, § 1, p. 494; Stats. 1937, ch. 90, § 6303, p. 306; Stats. 1973, ch. 993, § 46, p. 1927; Stats. 1978, ch. 1248, § 1, p. 4060; Stats. 2001, ch. 807, § 1; Stats. 2002, ch. 368, § 1.)

Generally speaking, "household domestic service" is understood to include work both within *and* outside a residence. (See *Catto v. Plant* (1927) 106 Conn. 236 [137 A. 764, 765–767] [gardener a "domestic servant"]; *id.* at p. 766 ["ordinarily a domestic servant is one whose service is connected with the maintenance of the house and land connected with it"].) Indeed, for purposes of regulating wages, hours, and working conditions for household occupations, the Industrial Welfare Commission defines "household occupations" in part as "all services related to the . . . maintenance of a private household or its premises by an employee of a private householder," including "gardeners." (Cal. Code Regs., tit. 8, § 11150, subd. 2(i).) Tree trimming is a service commonly performed by persons hired by homeowners to maintain residential premises.

Moreover, the purpose of the 1973 overhaul of OSHA was "to allow the State of California to assume responsibility for development and enforcement of occupational safety and health standards under a state plan pursuant to Section 18 of the Federal Occupational Safety and Health Act of 1970 . . . ." (Stats. 1973, ch. 993, § 107, pp. 1954–1955.) The 1972 proposed California plan stated that the former Division of Industrial Safety's "authority extends to virtually every place of employment in California . . . . [T]he principal exceptions are Federal government agencies, maritime workers, household domestic service workers, and railroad workers except those employed in railroad shops." (Agriculture & Services Agency, Cal. Occupational Safety & Health Plan (Sept. 25, 1972) § 3(B), p. III-1.) The exceptions noted for federal agencies, maritime workers, and railroad workers are for broad categories of employees. Viewed in this context, it is likely the term "household domestic service workers" similarly encompassed a broad category of workers performing tasks in- and outside of a private residence. ■ In subsequently enacting the 1973 enabling legislation, and using the term "household domestic service" in section 6303, subdivision (b) as an exception to covered "employment," the Legislature no doubt also intended to refer to a broad category of workers.

■ In addition, the term "household domestic service" implies duties that are personal to the homeowner, not those which relate to a commercial or business activity on the homeowner's part. While OSHA and its predecessors have operated for 90 years primarily in the commercial setting, we need not decide in this case whether a homeowner is subject to OSHA for noncommercial projects other than tree trimming. It is sufficient to note here that there is no indication Lawson wanted the palm tree trimmed for any commercial purpose.

■ Finally, overwhelming public policy and practical considerations make it unlikely the Legislature intended the complex regulatory scheme that is OSHA to apply to a homeowner hiring a worker to perform tree trimming. It is doubtful the average homeowner realizes tree trimming can require a contractor's license, let alone "expect[s] that OSHA requirements would apply when they hire someone to trim a tree for their own personal benefit and not for a commercial purpose . . . . Moreover, homeowners are ill-equipped to understand or to comply with the specialized requirements of OSHA." (*Rosas, supra,* 67 Cal.App.4th at p. 826.) Imputing OSHA liability to a homeowner under the circumstances of this case violates basic notions of fairness and notice.

Lawson asserts that of the 24 states that have federal Occupational Safety and Health Administration approved state plans (including California), "no state has published an opinion finding that a homeowner who is not conducting business out of his home is nonetheless responsible for complying with

OSHA in the process of home construction, work, or maintenance."[4] Fernandez does not argue otherwise, but simply states that none of the cases cited by Lawson involve a homeowner being deemed an employer as the statutory consequence of hiring an unlicensed contractor. Here, of course, we are addressing the specific meaning of "employment" under OSHA, not the more general definition of "employer" under section 2750.5.

■ The Court of Appeal concluded that "the test for whether a tree trimming qualifies as a household domestic service should be whether an average member of the household has the skill and competence to undertake the activity." Fernandez argues this is a "rational and predictable test for determining whether tree trimming is or is not subject to the 'household domestic service' exclusion under OSHA." Of course, nothing could be further from the truth. Rather, the Court of Appeal's approach creates massive uncertainty for a homeowner as to when OSHA would apply. Homeowners are in no position to assess whether they are an "average" homeowner in terms of their tree trimming competence.

■ Fernandez argues that tree trimming cannot be considered a household domestic service because there are safety regulations concerning tree trimming. Even the Court of Appeal below, which otherwise ruled in Fernandez's favor, rejected this argument. As it observed, "[t]ree trimming services are provided in a wide variety of business, commercial and public contexts. OSHA regulations for tree trimming are therefore necessary to govern instances where such services are provided in contexts other than for a private homeowner. Consequently, the fact such regulations exist does not automatically mean tree trimming must always fall outside OSHA's 'household domestic service' exclusion."

■ Similarly, Fernandez argues that because a contractor's license is required to trim a tree 15 feet or more in height, trimming a 50-foot tree cannot be a household domestic service. A contractor's license is generally required for a variety of activities, including maintaining or servicing air conditioning, heating, or refrigeration equipment, or installing carpet. (Bus. & Prof. Code, §§ 7026.1, subd. (a), 7026.3, 7028, subd. (a).) It is not obvious we would conclude as a matter of law that such activities could never be considered household domestic services.

Having concluded Lawson is not subject to OSHA for noncommercial tree trimming, we need not reach the issue of whether Fernandez may be estopped

---

[4] "The Connecticut, New Jersey and New York plans cover public sector (state & local government) employment only" and hence are unlikely to involve homeowners. (U.S. Dept. Labor, Occupational Safety & Health Admin. [as of July 7, 2003].)

from denying ATS's independent contractor status because of any licensing misrepresentations on the part of Lascano.

## DISPOSITION

The judgment of the Court of Appeal is reversed and the case remanded to that court for proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**BROWN, J.,** Concurring.—Based on our decision in *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5 [219 Cal.Rptr. 13, 706 P.2d 1146] (*State Compensation*), the parties in this case assume plaintiff Miguel Fernandez is deemed the employee of homeowners Thomas and Gaile Lawson (Lawson) by operation of Labor Code[1] section 2750.5[2]

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

[2] Section 2750.5 provides: "There is a rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, or who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor. Proof of independent contractor status includes satisfactory proof of these factors:

"(a) That the individual has the right to control and discretion as to the manner of performance of the contract for services in that the result of the work and not the means by which it is accomplished is the primary factor bargained for.

"(b) That the individual is customarily engaged in an independently established business.

"(c) That the individual's independent contractor status is bona fide and not a subterfuge to avoid employee status. A bona fide independent contractor status is further evidenced by the presence of cumulative factors such as substantial investment other than personal services in the business, holding out to be in business for oneself, bargaining for a contract to complete a specific project for compensation by project rather than by time, control over the time and place the work is performed, supplying the tools or instrumentalities used in the work other than tools and instrumentalities normally and customarily provided by employees, hiring employees, performing work that is not ordinarily in the course of the principal's work, performing work that requires a particular skill, holding a license pursuant to the Business and Professions Code, the intent by the parties that the work relationship is of an independent contractor status, or that the relationship is not severable or terminable at will by the principal but gives rise to an action for breach of contract.

"In addition to the factors contained in subdivisions (a), (b), and (c), any person performing any function or activity for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code shall hold a valid contractors' license as a condition of having independent contractor status.

"For purposes of workers' compensation law, this presumption is a supplement to the existing statutory definitions of employee and independent contractor, and is not intended to lessen the coverage of employees under Division 4 and Division 5."

because Anthony's Tree Service (ATS) was unlicensed, and Fernandez was performing work for ATS which required a contractor's license. Were the question before us today, I would conclude *State Compensation* was wrongly decided and section 2750.5 has no such effect.

## BACKGROUND

Section 2750.5 creates a rebuttable presumption affecting the burden of proof that a worker performing services for which a contractor's license is required, or who is performing such services for a person who is required to obtain such a license, is an employee rather than an independent contractor. (§ 2750.5.) Proof of independent contractor status includes satisfactory proof of the factors delineated in subdivisions (a), (b), and (c). The penultimate paragraph in section 2750.5 provides, "In addition to the factors contained in subdivisions (a), (b), and (c), any person performing any function or activity for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code shall hold a valid contractors' license as a condition of having independent contractor status."

In *State Compensation, supra*, 40 Cal.3d 5, a ranch owner hired an unlicensed contractor (*id.* at p. 8) to "construct a bedroom and a bath in the attic of his ranch house with a stairway providing access" (*id.* at p. 7). The contractor fell from a scaffold and was rendered a quadriplegic. (*Id.* at p. 8.) The ranch owner, apparently not a party to the action, appeared by separate counsel in the review proceeding and argued the contractor was an employee. Similarly, in a personal injury action brought against him by the contractor, the ranch owner asserted that workers' compensation was the contractor's exclusive remedy. (*Id.* at p. 7, fn. 1.) State Compensation Insurance Fund, the ranch owner's workers' compensation insurer, argued the penultimate paragraph of section 2750.5 was only applicable when the worker was seeking independent contractor status and not when the worker was seeking employee status. (*State Compensation*, at p. 8.)

This court disagreed, in particular concluding "the penultimate paragraph establishes a fourth factor necessary to rebut the presumption" that a worker is an employee, not an independent contractor. (*State Compensation, supra*, 40 Cal.3d at p. 12.) "[B]y stating that a license is a condition of the status, the Legislature has unequivocally stated that the person lacking the requisite license may not be an independent contractor." (*Id.* at p. 15.) Thus, while the contractor arguably otherwise satisfied the test for being an

independent contractor, because he was unlicensed he was held to be an employee entitled to workers' compensation benefits.[3] (*State Compensation,* at pp. 7–8, 12–16.)

Justice Mosk filed a concurring opinion, expressing his "concern about the unfair burden effectively imposed on a class of hirers" by Labor Code section 2750.5. (*State Compensation, supra,* 40 Cal.3d at p. 16 (conc. opn. of Mosk, J.).) He noted that "Insurance Code section 11590 requires comprehensive personal liability insurance policies to contain a provision for compensation insurance for 'employees,' as that term is defined in Labor Code section 3351, subdivision (d); [section 3352, subdivision (h),] however, expressly excludes, among others, any person employed for less than 52 hours during the 90 calendar days immediately preceding the date of the injury [citation]. Thus, policies drawn to incorporate [Insurance Code] section 11590 effectively fail to provide compensation insurance in the apparently common situation in which workers are engaged in fairly routine and minor repairs rather than major capital improvements." (*State Compensation,* at pp. 17–18.) Justice Lucas dissented, adopting the Court of Appeal opinion below, and concluding the language in Labor Code section 2750.5's penultimate paragraph simply meant that the contractor (as opposed to the ranch owner) could not assert independent contractor status unless he had a contractor's license. (*State Compensation,* at pp. 18–23 (dis. opn. of Lucas, J.).)

## DISCUSSION

In *State Compensation, supra,* 40 Cal.3d 5, we did not consider the broader implications of concluding the homeowner was an employer under section 2750.5, perhaps because we were only focusing on workers' compensation coverage, and the homeowner had that coverage available. Here, while Lawson paid premiums for workers' compensation coverage, Fernandez fell outside the coverage provisions of workers' compensation by virtue of the

---

[3] (See, e.g., *Hunt Bldg. Corp. v. Bernick* (2000) 79 Cal.App.4th 213, 216, 220 [93 Cal.Rptr.2d 883] [general contractor liable for unlicensed subcontractors' employees' unpaid unemployment insurance and other contributions and withholding taxes by operation of § 2750.5]; *Rosas v. Dishong* (1998) 67 Cal.App.4th 815, 817, 821–823, 826 [79 Cal.Rptr.2d 339] [tree trimmer who worked too few hours to qualify for workers' compensation benefits still an employee by operation of § 2750.5 for purposes of tort liability; homeowner not liable under California's Occupational Safety and Health Act (OSHA) (§ 6300 et seq.) due to "household domestic service" exception]; *Foss v. Anthony Industries* (1983) 139 Cal.App.3d 794, 797–800 [189 Cal.Rptr. 31] [§ 2750.5 applies in tort actions by third parties against hirer of unlicensed contractor regarding torts by unlicensed contractor's employee, but licensing requirement not retroactive]; but see *Fillmore v. Irvine* (1983) 146 Cal.App.3d 649, 657 [194 Cal.Rptr. 319] [Lab. Code, § 2750.5 does not apply to determinations of whether a person is an employee or independent contractor under Bus. & Prof. Code, § 7031, which in general bars actions to collect compensation by unlicensed contractors].)

number of hours worked. Therefore, unlike the homeowner in *State Compensation*, whose "employee" came within the coverage provisions of workers' compensation and workers' compensation was his exclusive remedy, Lawson is subject to civil liability as an employer.

Of course, the ramifications of placing employer status on unsuspecting homeowners hiring workers to do a discrete task the homeowner might never suspect would require a contractor's license are dramatic. Presumably, in the absence of any exclusion under the applicable law, homeowners become potentially liable not only for OSHA compliance, but COBRA health coverage benefits, sexual harassment claims, collective bargaining agreement enforcement, and a myriad of other obligations they are ill-equipped to anticipate or comply with. It seems unlikely the Legislature intended this result when it enacted section 2750.5.

Rather, it appears Justice Lucas and the Court of Appeal in *State Compensation* were correct that the language in section 2750.5's penultimate paragraph simply means that the contractor, as opposed to the homeowner, is precluded from asserting independent contractor status if he is not licensed.[4]

As can be seen, section 2750.5, subdivision (c) already includes "holding a license pursuant to the Business and Professions Code" as one of the many cumulative factors to consider in determining whether the worker's indepen-dent contractor status is bona fide. It seems unlikely the Legislature neverthe-less singled out this factor as a kind of "trump card," the absence of which

---

[4] Under this approach, Eliseo Lascano, doing business as ATS, is initially presumed to be Lawson's employee. (§ 2750.5 ["There is a rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required . . . is an employee rather than an independent contractor"].) However, that presumption is rebutted by overwhelm-ing evidence that Lascano satisfied the criteria for being an independent contractor delineated in subdivisions (a), (b), and (c). For example, Lascano had "the right to control and discretion as to the manner of performance of the contract for services," was "customarily engaged in an independently established business," had a "substantial investment other than personal services in the business," held himself "out to be in business for [him]self," "bargain[ed] for a contract to complete a specific project for compensation by project rather than by time," exercised "control over the time and place the work [was] performed," "suppl[ied] the tools or instrumentalities used in the work," "hir[ed] employees," "perform[ed] work that [was] not ordinarily in the course of the principal's work," and "perform[ed] work that require[d] a particular skill." (§ 2750.5, subds. (a), (b), (c).)

Furthermore, under this approach, Fernandez is presumed an employee of Lascano, and that presumption is not rebutted by the criteria inparagraphs (a), (b), or (c). (§ 2750.5 ["There is a rebuttable presumption affecting the burden of proof that a worker . . . who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor"].) Neither Lascano nor Fernandez is rendered an employee of Lawson by virtue of the penultimate paragraph of section 2750.5. Rather, this paragraph simply means that the contractor is precluded from asserting independent contractor status if he is not licensed.

renders a worker an employee despite any other evidence of independent contractor status. Moreover, if the Legislature had intended the penultimate paragraph to be part of the criteria for rebutting the presumption a worker was an employee, it presumably would have made "having a license" factor (d), along with the other three factors, not listed it in a different paragraph. Further, it would have deleted the reference in subdivision (c) to licensing.

Along these lines, the legislative history of section 2750.5 states, *"Three basic factors would have to be proved to show independent contractor status under this bill . . . ."* (Sen. Industrial Relations Com., Analysis of Assem. Bill No. 3429 (1977–1978 Reg. Sess.) Aug. 14, 1978, p. 2, italics added.) The analysis then summarizes the factors currently in section 2750.5, subdivisions (a) through (c). (Sen. Industrial Relations Com., Analysis of Assem. Bill No. 3429, *supra,* p. 2.) "Finally, this bill would require any contractor performing any function or activity for which a license is required from the Contractors' State Licensing Board to hold the required license as a condition of having independent contractor status." (*Ibid.*) In addition, the legislative history shows the bill was originally amended to read, "In addition to subdivisions (a), (b) and (c), any person claiming an independent contractor status shall have, in his possession, a valid contractor's license issued pursuant to the provisions contained in Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code." (Assem. Bill No. 3429 (1977–1978 Reg. Sess.) as amended Aug. 7, 1978.)

Indeed, the legislative history of section 2750.5 indicates the Legislature was concerned contractors were improperly characterizing those they hired as independent contractors instead of employees and thereby denying them union scale pay, and workers' compensation and unemployment insurance benefits. (Enrolled Bill Rep. on Assem. Bill No. 3429 (1977–1978 Reg. Sess.) Sept. 12, 1978, p. 1 ["The need for this legislation stems from work agreements in the construction industry that tend to undermine collective bargaining agreements by using the guise of independent contractor to cover work that is normally done by employees, thus avoiding payment of union scale, workers compensation insurance and fringe benefits"]; Sen. Floor Statement, Assem. Bill No. 3429 (1977–1978 Reg. Sess.) p. 1 ["This legislation is needed because of the huge increase in the number of contractors who are treating their employees as independent subcontractors in order to illegally escape payment of employee U[nemployment] I[nsurance] taxes, benefits, workers' compensation premiums, and other costs associated with employees. This situation is totally unfair and is competitively killing the honest contractor who plays by the rules"].) There is no indication in the legislative history the Legislature intended section 2750.5 to apply to a homeowner who hires an unlicensed contractor. (Sen. Floor Statement, Assem. Bill No. 3429 (1977-1978 Reg. Sess.) p. 2 ["This bill only covers construction workers and doesn't cover other employers or employees"].)

Indeed, a contractor or construction worker would reasonably be expected to be familiar with licensing and safety law requirements, whereas the average homeowner would not.

Moreover, the *State Compensation* analysis leads to several anomalous results. As alluded to by Justice Lucas in his *State Compensation* dissent, in concluding the homeowner is an employer, we are providing either workers' compensation or tort recovery to a worker who committed a misdemeanor in performing unlicensed contracting work, but not providing such coverage or recovery to a contractor who actually complied with the law. (*State Compensation, supra,* 40 Cal.3d at p. 21.) This is "inconsistent with the purpose of the licensing laws." (*Ibid.*) Similarly, we create the ironic situation that while the homeowner, Lawson, did not have to pay Lascano, doing business as Anthony's Tree Service, because he was unlicensed (Bus. & Prof. Code, § 7031), Lawson is deemed his employer under section 2750.5, with concomitant workers' compensation or tort liability, because Lascano was unlicensed. And, most important, despite the fact that the legislative history of section 2750.5 never hints the statute would apply to a homeowner, we expose unsuspecting homeowners to a panoply of obligations the homeowner is likely unaware of and with which they have little ability to comply. This cannot be a proper interpretation of section 2750.5, and the Legislature should act promptly, by deleting or amending the penultimate paragraph of section 2750.5, to restore an apparently straightforward intent which has been undermined by the section's garbled syntax.

Baxter, J., concurred.