Filed 8/2/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| MARY E. JONES, | C084870 |
| Plaintiff and Appellant, | (Super. Ct. No. CU15081472) |
| v. | |
| DANITA SORENSON, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Nevada County, Thomas M. Anderson, Judge.  Reversed with directions.

Law Offices of Gary A. Angel, Gary A. Angel and Frear Stephen Schmid for Plaintiff and Appellant.

Michael Maguire & Associates, Paul Kevin Wood and Kathryn Saldana; Tiza Serrano Thompson & Associates and Gavan Rhys Munter for Defendant and Respondent.

Despite the prevalence of "do-it-yourself" manuals and television shows, most homeowners eventually decide that some home repairs or maintenance would best be done by hiring someone to do the work. Inevitably, some workers are injured. There are sometimes confusing rules about when a homeowner is liable for injuries to workers on the property, either in tort or under the workers' compensation system. The common questions include whether the person hired by the homeowner was (1) required to be a licensed professional to do the work, and (2) if so, whether the person had the required license.

As stated by our Supreme Court, "It is doubtful the average homeowner realizes tree trimming can require a contractor's license." (*Fernandez v. Lawson* (2003) 31 Cal.4th 31, 37 (*Fernandez*).)

Plaintiff Mary E. Jones appeals from a judgment after a grant of summary judgment to defendant Danita Sorenson. Sorenson hired a gardener to work on her property and the gardener hired Jones to help her. Jones was injured when she fell from a ladder while trimming a tree at least 15 feet tall. Jones sued Sorenson, claiming such work required a license but the gardener was not licensed and the gardener's negligence caused the fall. Jones claimed that Sorenson was liable to Jones under a respondeat superior theory, because she was as a matter of law the employer of both the gardener and Jones.

The trial court ruled in effect that the terms "gardener" and "nurseryperson" as used in Business and Professions Code section 7026.1[1] were synonymous, and therefore Sorenson could avoid tort liability because a person acting as a nurseryperson may trim trees 15 feet tall or higher without a contractor's license, although a gardener cannot.[2]

---

[1] Undesignated statutory references are to the Business and Professions Code.

[2] As this case illustrates, a homeowner wanting tall trees (15 feet or taller) trimmed may minimize liability by hiring a licensed tree service contractor, that is, a person holding a

We disagree with this reading of the relevant statute, which distinguishes between a "gardener" and a "nurseryperson"; the latter refers to a *licensed* operator of a nursery, whereas a gardener does not require a license. There is no evidence that the gardener Sorenson hired was *also* a nurseryperson. This means Sorenson--the movant on summary judgment--has not refuted the claim that she was the gardener's (and therefore Jones's) employer, and potentially liable under a respondeat superior theory for the gardener's alleged negligence. We shall reverse the judgment without addressing other subsidiary points.

## PROCEDURAL BACKGROUND

Generally, a contractor includes a person who prunes trees, with two exceptions relevant to this case, one for a "nurseryperson" performing incidental tree pruning, and one for a "gardener" performing incidental pruning of trees less than 15 feet tall. (§ 7026.1, subd. (a)(4).) We will revisit these statutory exceptions, *post*.

*The Pleadings*

The complaint alleged Sorenson hired "Odette Miranda dba Designs by Leo" to trim and cut trees on Sorenson's property, and Miranda (sometimes called "Leo" in the record) hired Jones to help her. "While trimming and cutting a tree over 15 feet tall, and while using a ladder provided by Miranda, [Jones] fell" and was hurt. Miranda was negligent in various ways (failure to train, supervise, provide proper equipment, etc.), but because Miranda was an unlicensed contractor, Sorenson was deemed by law to be Miranda's employer. Therefore, Sorenson was liable for Miranda's negligence on a respondeat superior theory, i.e., Miranda's negligence was "imputable to defendant

---

"C-61/D-49 Tree Service" specialty license issued by the Contractors State License Board. (See Cal. Code Regs., tit. 16, § 832.61; Dept. of Consumer Affairs, Contractors State License Bd. (2015) Description of Classifications, p. 16 [licensing a person who "prunes trees, removes trees, limbs or stumps . . . ."].)

3

Sorenson." Further, Sorenson was liable for "failing to properly oversee and supervise the work being performed by her employees." Miranda was not then a named defendant.

The answer denied these allegations and raised various affirmative defenses, including that no contractor's license was required on the alleged facts.

*The Summary Judgment Proceedings*

The undisputed facts showed that Miranda had done landscaping work for Sorenson for 13 or 14 years, including weeding, trimming, maintaining a front-yard pond, and so forth. Miranda did not routinely use a ladder. Miranda was not licensed or insured. Sorenson had used a licensed contractor to remove trees or do extensive tree trimming. Jones worked as a helper for Miranda about twice a year, and Miranda paid Jones. Jones had worked at Sorenson's property four times, and once she had trimmed trees from the ground. This time Jones used a small ladder and a larger pole ladder to prune lilacs and remove plums from a tree.

Miranda then told Jones to use a ladder to trim branches from an oak tree that was over 15 feet tall. Jones confirmed the larger ladder was stable and set up correctly before climbing it to the third rung from the top, and then began using loppers to trim branches that Miranda pointed out, as Miranda held the ladder. Because Jones could not reach a fourth branch (about eight to 10 feet off the ground), Jones got off the ladder; it was moved slightly, then before climbing it again Jones made sure it was stable and properly placed. She again reached the third rung from the top and held the loppers with one hand, but before she began to trim the branch Jones suddenly felt the ladder move and saw that Miranda was *not* holding it. Jones does not know what caused the ladder to fall. Sorenson was not present. Jones's claim for workers compensation benefits was denied by Sorenson's homeowner's insurance carrier because Jones had not satisfied statutory minimum work requirements under the Labor Code.

There were some factual disputes. Miranda testified Jones declined to move the ladder and was chopping at a branch instead of cutting it, causing the ladder to bounce--

4

while Miranda held it--when the ladder fell. Jones denied bouncing the ladder, and testified Miranda was no longer holding it, thereby allowing it to tilt. Sorenson testified she had hired Miranda that day for routine pond and landscape maintenance, not to trim trees. But Miranda testified Sorenson told her to trim at least two oak branches. Jones testified Sorenson told Miranda to get a ladder from a shed, to trim the lilacs. Jones also testified Sorenson was "in and out" and did not leave the property, though Sorenson did not see Jones fall, so far as Jones knew.

Sorenson's legal theories were: (1) by statute the incidental pruning of trees by a nurseryperson did not require a contractor's license; (2) by statute the incidental pruning of trees less than 15 feet tall by a gardener did not require a contractor's license; and 3) Sorenson was not present and was not herself negligent. Sorenson's moving papers equated the terms "gardener" and "nurseryperson."

Jones argued that because Sorenson hired Miranda and asked her to trim that oak tree that day (as shown by Miranda's deposition testimony), and because Miranda was not licensed to work on trees that tall, Sorenson was liable for Miranda's negligence (e.g., not holding the ladder) that contributed to the fall. There was a subsidiary claim about Miranda's failure to attend promptly to Jones's injuries, but it is not necessary to address that point herein.

The trial court granted the motion, reasoning that although a homeowner who uses an unlicensed contractor to trim trees at least 15 feet tall is liable for the negligence of the contractor, Miranda came within a statutory exception for a "nurseryperson" performing "incidental pruning" of trees and the court found the pruning done here was incidental. The court separately found that there was no evidence Sorenson was directly (rather than vicariously) negligent for Jones's fall. The latter finding (of no direct negligence) is not challenged on appeal.

*Reconsideration*

Jones moved for reconsideration, arguing that a nurseryperson (or nurseryman) was not the same as a gardener, but the trial court's ruling conflated the two statutory terms. Jones purported to quote the trial court's tentative ruling and describe the unreported hearing on the summary judgment motion to argue the tentative ruling had correctly analyzed the question and that triable disputes remained.[3] Jones provided a dictionary definition of "nurseryman," but no statutory analysis. Jones also alleged she had filed an amended complaint naming Miranda as a defendant, and represented that Miranda would defend herself by claiming to be a gardener, but not a nurseryperson. Jones also contended Sorenson had first raised the issue of the distinction in the reply papers, depriving Jones of an adequate opportunity to address the point in opposition to summary judgment.

In opposition to reconsideration, Sorenson partly pointed out that she had cited the "nurseryperson" statute in the motion for summary judgment.

The trial court denied the motion to reconsider, finding no new facts or law had been presented, and that the summary judgment moving papers had referenced the correct statute and had "clearly delineated the job duties performed by the workers."

*Judgment, New Trial Motion, and Appeal*

An amended judgment was filed on March 21, 2017, and notice of entry thereof was filed on April 10, 2017.

Jones moved for a new trial on April 17, 2017, again raising the distinction between a nurseryperson and a gardener. This time Jones attached the declaration of a

---

[3] The record on appeal does not include either a transcript or settled statement of the unreported hearing or the trial court's tentative decision, but each is improperly referenced in Jones's briefing.

6

retired nurseryman who explained that the only time a nurseryman would prune trees would be at the nursery itself, to prepare trees for sale.

Sorenson's opposition in part argued this was an improper second motion for reconsideration, and there was no good cause for presenting new facts. Sorenson also objected to the new declaration because it purported to give an opinion about the legal definition of a nurseryperson.

Because the trial court never ruled on the new trial motion, it was eventually deemed denied by operation of law. (See Code Civ. Proc., § 660; 8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, §§ 72-73, pp. 658-659.) Jones then timely filed her notice of appeal.

## DISCUSSION

Although this case arises on summary judgment, "we may bypass the strict 'three-step paradigm for summary judgments' where, as here, there are no disputes about the record. [Citations.] Further, where the briefing agrees on factual or procedural matters, we may accept those matters as conceded. [Citations.]" (*Ponte v. County of Calaveras* (2017) 14 Cal.App.5th 551, 555; see *Flake v. Neumiller & Beardslee* (2017) 9 Cal.App.5th 223, 229.) This case presents a pure issue of law.[4]

We conclude the trial court erroneously conflated the terms "nurseryperson" and "gardener" as used in section 7026.1. Their different treatment in the statute suggests they have different meanings, which is explained by the fact that a nurseryperson is a person who holds a license to operate a nursery, whereas a gardener need not be licensed.

_____

[4] Although a summary judgment ruling may be attacked by a new trial motion (see 8 Witkin, Cal. Procedure, *supra*, Attack on Judgment in Trial Court, § 23, pp. 605-606), because we find the summary judgment motion should not have been granted, we need not review the propriety of the denials of the motions for reconsideration or for a new trial.

Before analyzing section 7026.1, we explain the general contours governing the liability of a homeowner who hires an unlicensed contractor, wittingly or not.

"Ordinarily, when an employee sustains a worksite injury, the exclusive remedy against his or her employer is provided by the workers' compensation law, and the employer is immune from a suit for damages. [Citations.] But if the employer has not secured workers' compensation coverage or its equivalent, an injured employee may bring a civil suit against his or her employer. [Citations.] If the employee establishes that he or she was injured in the course and scope of his or her employment, [a statute] creates a rebuttable presumption that an uninsured employer was negligent and the employer is precluded from claiming comparative fault or assumption of risk as a defense.[5] [Citation.]

"When an employee of a contractor is injured, and the contractor is unlicensed and uninsured at the time of injury, the injured employee's recourse may be against not only the contractor, but also against the landowner who hired the contractor, as an additional employer. 'Among the legal consequences of hiring an unlicensed contractor who is injured or whose employee is injured performing the work is that different employment relationships may arise with respect to "employer" liability for workers' compensation *or tort damages*.' [Citation.] The injured employee may seek workers' compensation benefits from the landowner through a general liability policy or homeowners insurance policy." (*Vebr v. Culp* (2015) 241 Cal.App.4th 1044, 1051-1052, italics added (*Vebr*).)

Vebr was hurt when he fell from a ladder, and *Vebr* assumed without deciding that because the homeowners had hired Vebr's unlicensed and uninsured contractor, they could be directly liable to him for their own negligence *and* vicariously liable under

---

**5** We note here that the rebuttable presumption in compensation cases that an employer is liable for injuries to workers (Lab. Code, § 3708) does not apply to workers who do not meet certain statutory wage and hour thresholds (see Lab. Code, § 3352). We also note that some authorities discuss whether the general statutory $500 threshold for needing a contractor's license (Bus. & Prof. Code, § 7048), is relevant to the employee status question in a civil *contract* suit to recover payment for services by an unlicensed person (see 1 Witkin, Sum. of Cal. Law (11th ed. 2017) Contracts, § 499, pp. 527-529). Sorenson did not raise whether this threshold is relevant in a civil *tort* suit in her summary judgment motion (see *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 433), and does not raise the point in her appellate brief (see *Brockey v. Moore* (2003) 107 Cal.App.4th 86, 98), therefore we do not address it.

8

respondeat superior for the contractor's negligence. However, on the facts the court found no evidence of negligence either by the homeowners or the contractor. (*Vebr*, *supra*, 241 Cal.App.4th at pp. 1047-1048, 1052-1055, 1058.)

In *Rosas v. Dishong* (1998) 67 Cal.App.4th 815 (*Rosas*), which did not involve a sub-employee, Rosas had done landscaping for the Dishongs for years, and agreed to trim a tree branch overhanging their roof; he fell and was hurt. (*Id*. at p. 817.) Rosas sued the Dishongs in tort after his workers' compensation claim against their homeowners policy was denied because he had not worked the minimum hours required by the Labor Code. (*Id*., at p. 818; see Lab. Code, § 3352, former subd. (h) [now subd. (a)(8)]; *Zaragoza v. Ibarra* (2009) 174 Cal.App.4th 1012, 1016 [worker for unlicensed contractor not within workers' compensation system unless he or she has worked either 52 hours or earned $100 within 90 days before the injury] (*Zaragoza*); *Cedillo v. Workers' Comp. Appeals Bd*. (2003) 106 Cal.App.4th 227, 234-237 (*Cedillo*).)

The parties in *Rosas* stipulated that trimming trees over 15 feet tall required a license under section 7026.1 that Rosas did not have. (*Rosas*, *supra*, 67 Cal.App.4th at p. 818.) The trial court therefore deemed Rosas to be the Dishongs's employee. (*Ibid*; see Lab. Code, § 2750.5 [rebuttable presumption "that a worker performing services for which a license is required . . . or who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor," and further providing that holding a contractor's license when one is required is "a condition of having independent contractor status"]; see *Mendoza v. Brodeur* (2006) 142 Cal.App.4th 72, 79-81 (*Mendoza*) [fact plaintiff did not meet requirements for workers' compensation does not mean he is not an employee in a civil tort suit via Lab. Code, § 2750.5]; *Moehring v. Thomas* (2005) 126 Cal.App.4th 1515, 1520 [presumption applies in both compensation and tort cases]; *Furtado v. Schriefer* (1991) 228 Cal.App.3d 1608,

1616-1617; *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 330; *Foss v. Anthony Industries* (1983) 139 Cal.App.3d 794, 797 (*Foss*).)[6]

Rosas held the burden was on the homeowner to ensure workers were properly licensed, and because Rosas had not met the requirements to qualify for workers' compensation, he was deemed to be an employee for tort purposes.  (*Rosas*, *supra*, 67 Cal.App.4th at pp. 819-823; see *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 13-15 [policy to compensate injured workers outweighs burden on homeowners to ensure they are licensed, in part because comprehensive personal liability policies contain workers' compensation coverage] (*SCIF*); *Cedillo*, *supra*, 106 Cal.App.4th at p. 230 [not a tort case; a finding that an unlicensed contractor is a homeowner's employee means the homeowner's insurance carrier must pay compensation benefits].)  But *Rosas* rejected application of OSHA standards to support a negligence per se theory.  (*Rosas*, *supra*, 67 Cal.App.4th at pp. 823-827; see p. 819, fn. 3.)

In *Ramirez v. Nelson* (2008) 44 Cal.4th 908, the employee of an unlicensed contractor was killed while trimming trees, and his estate sued the homeowner in tort.  *Ramirez* construed *SCIF* as holding that unlicensed contractors who become injured are "by operation of law, employees of the party who hired them for purposes of establishing workers' compensation benefit eligibility."  (*Id*. at p. 912.)  But *Ramirez* held a negligence per se theory based on the violation of a penal statute did not apply.  (*Ibid*.)  And, as Sorenson points out, *Ramirez* did not resolve whether the presumed employee

---

**6** Although this presumption of employee status (see Lab. Code, § 2750.5) cannot be rebutted by an unlicensed contractor, a person who represents himself or herself to be a licensed contractor may be estopped to change that position in some cases (see *Chin v. Namvar* (2008) 166 Cal.App.4th 994, 1003-1005; *Travelers Ins. Co. v. Workers' Comp. Appeals Bd*. (1983) 147 Cal.App.3d 1033, 1038).

status applied in a tort suit. (*Id*. at pp. 916-917 [calling the question "neither an easy nor settled one"]; see *Cortez v. Abich* (2011) 51 Cal.4th 285, 291 [similar].)

But our Legislature has not amended Labor Code section 2750.5, despite the fact that many cases have held or implied that a homeowner may be liable in tort if his or her contractor has no license. (See *Blackwell v. Vasilas* (2016) 244 Cal.App.4th 160, 167, 169-173 [Blackwell could sue property owner for the negligence of unlicensed contractor]; *Zaragoza*, *supra*, 174 Cal.App.4th at pp. 1022-1023 [homeowner could be sued by worker of unlicensed contractor, but there was no negligence on the facts]; *Mendoza*, *supra*, 142 Cal.App.4th at p. 82; *Rosas*, *supra*, 67 Cal.App.4th at pp. 826-827; *Foss*, *supra*, 139 Cal.App.3d at pp. 797-799.)

We presume our Legislature is aware of judicial decisions. (See *Estate of McDill* (1975) 14 Cal.3d 831, 839; *Direct Capital Corp. v. Brooks* (2017) 14 Cal.App.5th 1168, 1174, fn. 4.) Given longstanding legislative acquiescence in the holdings or assumptions in the above cases (see *Dickson v. Rehmke* (2008) 164 Cal.App.4th 469, 477; *Blew v. Horner* (1986) 187 Cal.App.3d 1380, 1389), we conclude that a homeowner on such facts is the employer of an unlicensed contractor for tort purposes. This may trigger vicarious (respondeat superior) liability for torts committed by such a contractor. (See *Foss*, *supra*, 139 Cal.App.3d at p. 799; 3 Witkin, Sum. of Cal. Law, *supra*, Agency & Employment, § 175, pp. 227-229.)

Our Supreme Court has stated, albeit in dicta, that a party "was not aware a contractor's license was required to trim a tree measuring 15 feet or more," citing a prior version of section 7026.1. (*Fernandez*, *supra*, 31 Cal.4th at p. 34, see *id*., at pp. 37-38; Stats 1991, ch. 1160, § 6, pp. 5563-5564.)[7] That statute evidently drove the parties to

---

[7] Certain OSHA regulations apply to tree trimming. (See Cal. Code Regs., tit. 8, §§ 3420, et seq.; *Fernandez*, *supra*, 31 Cal.4th at p. 35, fn. 3.) But because an ordinary

11

stipulate that a license was required in *Rosas*. Section 7026.1, subdivision (a)(4) now provides that a "contractor" includes for our purposes:

> "*Any person* not otherwise exempt by this chapter, *who performs* tree removal, *tree pruning*, stump removal, or engages in tree or limb cabling or guying. The term contractor does not include a person performing the activities of a nurseryperson who in the normal course of routine work performs incidental pruning of trees, or guying of planted trees and their limbs. The term contractor does not include a gardener who in the normal course of routine work performs incidental pruning of trees measuring less than 15 feet in height after planting." (§ 7026.1, subd. (a)(4), italics added.)

The first sentence treats "[a]ny person" who prunes a tree as a contractor, as the parties in *Rosas* understood, and therefore agreed (see *Rosas*, *supra*, 67 Cal.App.4th at p. 818). The trial court in this case relied on that point. Because a gardener who in the "normal course of routine work performs incidental pruning of trees . . . *less* than 15 feet in height" (§ 7026.1, subd. (a)(4), italics added) is *not* a contractor, a gardener who works on *taller* trees *is* a contractor (see *Leber v. DKD of Davis, Inc.* (2015) 237 Cal.App.4th 402, 407 [*Expressio unius est exclusio alterius*]).

But this case raises a different grammatical dispute. The last two sentences of section 7026.1, subdivision (a)(4), with key differences italicized, would look like this:

> "The term contractor does not include *a person performing the activities of a nurseryperson* who in the normal course of routine work performs incidental pruning of trees, or guying of planted trees and their limbs."

> "The term contractor does not include *a gardener* who in the normal course of routine work performs incidental pruning of trees measuring *less than 15 feet in height* after planting."

The first sentence covers a "person performing the activities of a nurseryperson" and the second covers a "gardener," and different activities are defined for each. The

---

gardener engages in "household domestic service" (Lab. Code, § 6303) she or he is not subject to those regulations. (See *Fernandez*, *supra*, 31 Cal.4th at pp. 36-37.)

latter has a height limitation on what trees "incidental pruning" can be done "in the normal course of routine work," but the former does not.

From this comparison we discern that a gardener is not the same as a nurseryperson. The Legislature's use of two different terms in two sentences of otherwise parallel construction in one subdivision signals that different meanings were intended. This is so for two reasons. First, "when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded. [Citations.]" (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725.) Second, otherwise one sentence would be largely if not entirely superfluous, but " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [citation]; 'a construction making some words surplusage is to be avoided.' [Citation.]" (*Moyer v. Workmen's Comp. Appeals Bd*. (1973) 10 Cal.3d 222, 230.)

Further, in ordinary parlance a gardener performs casual work such as mowing lawns, trimming plants, and so forth, and no party suggests a gardener must be licensed. But under the Food and Agriculture Code--never cited by either party and therefore not considered by the trial court--nursery operators *are* licensed. A nursery is a licensed producer of horticultural products. (See Food and Agr. Code, § 6721 [with exceptions, making it unlawful for any person "to sell any nursery stock unless such person holds a valid license . . . issued pursuant to this chapter"]; *id*., at § 6722 [license to be issued upon applicant's paying periodic fees and establishing "his character and good faith in seeking to carry on the business of selling nursery stock"].) Nurseries are licensed and inspected in part to discourage the proliferation of pests that threaten California's vital agricultural interests, and noncompliant licensees may have their licenses suspended or revoked. (See Ops.Cal.Atty.Gen. 120 (1959) [discussing predecessor statutory scheme]; 47 Cal.Jur.3d (2018) Nurseries and Nursery Stock, §§ 4-6.)

Thus, as stated in a document prepared by the California Landscape Architects Technical Committee, a "nurseryperson" holds "a license to sell nursery stock." (Permitted Practices, http://www.latc.ca.gov/laws_regs/permittedpracticechart_rev2010.pdf, archived at <https://perma.cc/XV9K-9CKT>.) Although that document states it is not intended to have "legal effect," it correctly summarizes reality as a matter of common sense. A nurseryman is commonly defined as "[o]ne who owns, or works in, a nursery for plants." (Shorter Oxford English Dict. (3d ed. 1944) p. 1345, col. c; see Webster's New Collegiate Dict. (1973) p. 789, col. a ["one whose occupation is the cultivation of plants (as trees and shrubs) esp. for sale"]; see also *Needham v. Winslow Nurseries, Inc*. (1953) 330 Mass. 95, 100 [111 N.E.2d 453, 456] ["According to dictionary definition a nursery is a place where trees, shrubs, plants, and so forth, are propagated from seed or otherwise for transplanting, for use as stock for grafting, and for sale"].) Business and Professions Code section 7026.1 used to use the word "nurseryman" but our Legislature changed it in a 2004 code maintenance bill to use the gender-neutral term "nurseryperson." (See Stats. 2004, ch. 183, § 10; cf. Stats. 1991, ch. 1160, § 6.) No change in meaning was intended by this amendment.

Thus, a nurseryperson is legally defined as a licensed professional engaged in cultivating plants. In contrast, a gardener generally tends existing landscaping. This distinction explains the different exclusions from the definition of a contractor as set forth in section 7026.1, subdivision (a)(4), as parsed, *ante*: A gardener becomes a contractor (whether licensed or not) if pruning trees 15 feet or taller; a licensed nurseryperson does not have the same height limitation, because of her or his presumed degree of expertise as reflected by the issuance of a state nursery license.

Nor can Sorenson find relief on her theory that whether licensed or not, Miranda was "in the normal course of routine work [as a nurseryperson] perform[ing] incidental pruning of trees" within the meaning of section 7026.1, subdivision (a)(4). The evidence

14

does not show Miranda was propagating plants incidental to running a nursery (licensed or not), but instead she was tending plants as an ordinary gardener.

Sorenson has not shown that Miranda was a licensed contractor. As we have explained, Miranda was not a nurseryperson, and the oak concededly was over the statutory height limit for trimming by gardeners. Thus, on this record we must conclude that Miranda (via Jones) was acting as a tree-pruner under the first sentence of section 7026.1, subdivision (a)(4), without the required contractor's license.

Apart from the dispute about whether Sorenson asked Miranda to trim the oak tree, there is also a dispute about whether Miranda's negligence (such as failing to hold the ladder) contributed to Jones's fall. (Cf. *Vebr*, *supra*, 241 Cal.App.4th at pp. 1047-1048, 1058 [no showing homeowner contributed to fall]; *Zaragoza*, *supra*, 174 Cal.App.4th at p. 1023 [homeowner's unlicensed contractor's employee was solely responsible for his own fall].) If Miranda's alleged negligence contributed to Jones's fall, such negligence might be ascribed to Sorenson, Miranda's employer. These factual disputes cannot be resolved in a summary judgment proceeding.

Accordingly, Sorenson is not entitled to judgment at this stage of the case.

## DISPOSITION

The judgment is reversed with directions to deny the summary judgment motion.
Sorenson shall pay Jones's costs on appeal.  (See Cal. Rules of Court, rule 8.278.)


                                        /s/
                                   Duarte, J.



We concur:



    /s/
Raye, P. J.



    /s/
Murray, J.