[No. G040242. Fourth Dist., Div. Three. June 8, 2009.]

ELIAZAR ZARAGOZA, Plaintiff and Appellant, v.
MARIA IBARRA, Defendant and Respondent.

### COUNSEL

Motamedi Law Offices and Alex A. Motamedi for Plaintiff and Appellant.

Gurvitz, Marlowe and Miller, Scott D. Miller, Ron G. Gurvitz and Julio C. Salazar for Defendant and Respondent.

### OPINION

**SILLS, P. J.**—This appeal arises out of a common scenario: A worker hired by an unlicensed contractor on a home remodeling project is injured while working on the job. When the worker has worked less than 52 hours in the 90 days prior to the accident, the law is clear that any claim the worker has against the homeowner for the injury is outside the workers' compensation system. However, the worker may bring a claim against the homeowner in simple negligence, if there is any.

In this case, however, undisputed facts show that there wasn't any negligence. The worker's injury was entirely his own fault, and there was no want of ordinary care taken by the homeowner. Hence summary judgment was properly granted, and we affirm.

## I. FACTS

### A. Facts Relating to the Workers' Compensation Question

In early November of 2004, Maria Ibarra engaged Claudio Quiroz to construct four rooms and two bathrooms on her premises. There is no dispute that Quiroz was an unlicensed contractor.

Quiroz, in turn, hired Eliazar Zaragoza to assist in the construction.[1] Zaragoza normally works at Taco Bell. Zaragoza's first day of work on the job was in late March 2005. His brief asserts that he was paid $100 for his work that day, but the fact is not record referenced.

Zaragoza's second day on the job was the day of the accident, April 18, 2005. No instructions or other communications were given to him that morning. He simply arrived at work and he and another worker, Mauricio Canongo (Quiroz's brother-in-law), set out to remove stucco from the upper portion of Ibarra's garage walls. The accident happened in the course of removing the stucco.

There was already a private residence at that address on the day of the accident. Ibarra was living there. She was, however, not home at the time of the accident.

### B. Facts Relating to Zaragoza's Tort Claim

Zaragoza got a one-sided, metallic, two-legged ladder that he found in the garage and set it up against one of the walls, the legs standing one foot away from the wall. There was dirt on the ground between the wall and the legs of the ladder. Zaragoza and Canongo soon found themselves stationed on top of two separate ladders, their backs to one another.

When Zaragoza climbed the ladder, the steps were neither wobbly nor slippery. He traveled up and down the ladder some three times and at some point adjusted the length of the ladder. After the adjustment, Zaragoza again traveled up and down the ladder some three more times. Then he got up about nine feet on the ladder and tried to pry a nail from the drywall with a hammer. He was unable to pull the nail out, but the momentum of his

---

[1] In his statement of disputed facts filed in opposition to Ibarra's motion for summary judgment, Zaragoza did not dispute that Quiroz "hired" him to assist on the construction. However, he posed an objection that "hired" was vague and ambiguous. Under these circumstances, "hired" is plain enough.

movement caused the ladder to slip and Zaragoza's left knee struck the ladder upon his landing on top of it.

### C. Facts Relating to This Litigation

Zaragoza filed a civil suit for injury to his knee. The trial court granted Ibarra's summary judgment motion on the ground Zaragoza had assumed the risk of injury under the undisputed facts.[2]

## II. DISCUSSION

### A. Workers' Compensation Exclusivity? No

 Zaragoza's injury does not fall within the exclusive purview of the workers' compensation laws despite Quiroz's unlicensed status.[3] The law is now well settled that a worker hired by an unlicensed contractor who in turn has been hired by a homeowner does not come within the workers' compensation system, despite the contractor's unlicensed status, when the worker has not worked 52 hours *or* earned $100 within 90 days prior to the date of the injury specified in section 3352, subdivision (h). (See *Ramirez v. Nelson* (2008) 44 Cal.4th 908, 914 [80 Cal.Rptr.3d 728, 188 P.3d 659] (*Ramirez*) ["During the hearing of pretrial motions it became apparent to the trial court and parties that the workers' compensation laws were inapplicable to this case for two reasons. . . . Second, the decedent had not worked the required 52 hours for the Nelsons, nor earned $100 during the 90 calendar days immediately preceding his death, so as to bring him within the special

---

[2] While the summary judgment motion used the phrase "plaintiff assumed the risk" in one of its subheadings, the *substance* of the motion was not one of classic assumption of risk. Rather, it was that Zaragoza had been solely responsible for his own injuries, and, in that regard, also asserted that Ibarra was not liable under "general negligence principles." The briefing in this court followed in that same train.

[3] In pertinent part, Labor Code section 2750.5 provides: "There is a rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, or who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor."

The statute is explained in *Mendoza v. Brodeur* (2006) 142 Cal.App.4th 72, 77 [47 Cal.Rptr.3d 310], this way: "Finally, section 2750.5 creates a rebuttable presumption that a worker performing services for which a license is required is an employee and not an independent contractor. The statute also makes a valid license a condition of independent contractor status. The Supreme Court has interpreted this statute to provide that 'the person lacking the requisite license may not be an independent contractor.' . . . 'Accordingly, the presumption that the person who employs the unlicensed contractor is the employer is conclusive. . . .' . . . [¶] Section 2750.5 is not a part of the workers' compensation law, but is contained in division 3 of the Labor Code—which deals with the employer-employee relationship. But by its own terms the statute supplements, and applies to, workers' compensation law." (Citations omitted.)

All undesignated statutory references in this opinion are to the Labor Code.

statutory definition of an 'employee' eligible for workers' compensation benefits, regardless of whether defendants maintained insurance that included workers' compensation coverage for their 'employees.' "]; *Mendoza v. Brodeur, supra*, 142 Cal.App.4th at p. 79 (*Mendoza*) [recognizing that roofer injured on first day of the job fell within § 3352, subd. (h) exclusion]; *Cedillo v. Workers' Comp. Appeals Bd.* (2003) 106 Cal.App.4th 227, 234 [130 Cal.Rptr.2d 581] (*Cedillo*) [agreeing with board's ruling that because injured worker "worked less than 52 hours on the roof" he was "excluded from being" homeowner's employee]; accord, *Heiman v. Workers' Comp. Appeals Bd.* (2007) 149 Cal.App.4th 724, 744–745 [57 Cal.Rptr.3d 56] (*Heiman*) [individual owners of the units in condo not responsible in workers' compensation for injury to worker hired by unlicensed contractor because they were owners and worker did not work sufficient hours under § 3352, subd. (h)].)[4]

Ibarra's argument that section 3352, subdivision (h) is "inoperative," and therefore Zaragoza is within the workers' compensation system, is not persuasive.[5] The argument goes like this: Section 3352, subdivision (h)—which tells us who is *not* within the workers' compensation system—is an exception to section 3351, subdivision (d)—which tells who *is* in the system. Ergo, a worker who does not come within section 3351, subdivision (d) is not not (double negative intended) outside the workers' compensation system by virtue of section 3352, subdivision (h), and if such a worker was hired by an unlicensed contractor who was hired by the homeowner, then such a worker

---

[4] Section 3352, subdivision (h) is written in the disjunctive. It provides:

" 'Employee' excludes the following: [¶] . . . [¶]

"(h) Any person defined in subdivision (d) of Section 3351 who was employed by the employer to be held liable for less than 52 hours during the 90 calendar days immediately preceding the date of the injury for injuries, as defined in Section 5411, *or* during the 90 calendar days immediately preceding the date of the last employment in an occupation exposing the employee to the hazards of the disease or injury for injuries, as defined in Section 5412, *or* who earned less than one hundred dollars ($100) in wages from the employer during the 90 calendar days immediately preceding the date of the injury for injuries, as defined in Section 5411, *or* during the 90 calendar days immediately preceding the date of the last employment in an occupation exposing the employee to the hazards of the disease or injury for injuries, as defined in Section 5412." (Italics added.)

Ibarra's assertion at oral argument that Zaragoza is not within the terms of section 3352, subdivision (h) because he was paid $100, even though he clearly worked less than 52 hours prior to the accident, was conclusively addressed and refuted in *Stewart v. Workers' Comp. Appeals Bd.* (1985) 172 Cal.App.3d 351, 355–356 [218 Cal.Rptr. 245], where the court said: "The parties have cited no appellate authority on the question whether a person who earned *more* than $100 but who worked *less* than 52 hours during the 90 calendar days preceding the injury is excluded from coverage. . . . [¶] . . . Here . . . it is undisputed that applicant worked less than 52 hours during the 90 calendar days immediately preceding the date of injury. We conclude that because applicant did not work the number of hours specified by the Legislature, he was excluded from the protection of the act by the provisions of section 3351, subdivision (d) and 3352, subdivision (h)."

[5] Perhaps fortunately for Ibarra, see footnote 6, *post*.

is *within* the workers' compensation system by virtue of the unlicensed contractor provisions of section 2750.5.[6]

 The argument is based on the premise that section 3351, subdivision (d) does not apply because, as in *Scott v. Workers' Comp. Appeals Bd.* (1981) 122 Cal.App.3d 979 [176 Cal.Rptr. 267] (*Scott*), Ibarra had not contracted for merely "casual" work—casual work is something like housekeeping, babysitting or part-time gardening (these examples are all from *Scott*, see *id.* at p. 985), but for the decidedly uncasual project of building a house. The salient passage from *Scott* is: "The building of a house cannot be deemed a casual or minor activity incidental to the ownership or use of the house; it is the essential prerequisite to the ownership and use of the house. Thus, the *qualifying language of section 3351, subdivision (d) contemplates a completed dwelling or at least a building sufficiently completed to be occupied as a residence.*" (*Id.* at p. 985, italics added.)

We now look at the actual language of section 3351, subdivision (d): " 'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and includes: [¶] . . . [¶] (d) Except as provided in subdivision (h) of Section 3352, any person employed by the owner or occupant of a residential dwelling whose *duties*

---

[6] Which, on review, appears a rather dangerous argument for Ibarra to make.

Under section 11590 of the Insurance Code, all homeowners' liability insurance policies are *deemed* to cover any injuries within the workers' compensation system by virtue of section 3351, subdivision (d). The statute provides: "Except as provided in Section 11591, no policy providing comprehensive personal liability insurance may be issued or renewed in this state on or after January 1, 1977, unless it contains a provision *for coverage against liability for the payment of compensation,* as defined in Section 3207 of the Labor Code, *to any person defined as an employee by subdivision (d) of Section 3351 of the Labor Code.* Any such policy in effect on or after January 1, 1977, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein. However, such coverage shall not apply if any other existing, valid and collectible, workers' compensation insurance for such liability is applicable to the injury or death of such employee." (Italics added.)

That is (and without knowing the terms of her homeowners' policy), unless Zaragoza comes within section 3351, subdivision (d), Ibarra may not have insurance for any workers' compensation liability owed by Ibarra to Zaragoza, and certainly not by virtue of the terms of Insurance Code section 11590.

The exception mentioned for Insurance Code section 11591 basically says that homeowners' policies cannot provide cheap workers' compensation insurance for the homeowner where the employee is working for the homeowner in connection with the homeowner's trade, business, profession or occupation. (Memo to lawyers working out of their homes: Get a separate workers' compensation policy for your secretary or file clerk; your homeowners' policy may not cover any injuries to him or her by virtue of Ins. Code, §§ 11590 & 11591.) Insurance Code section 11591 provides: "The requirements of Section 11590 shall be inapplicable to any such policy of insurance or endorsement where the services of such employee are in connection with the trade, business, profession, or occupation, as such terms are defined in Sections 3355 and 3356 of the Labor Code, of the insured."

*are incidental to the ownership, maintenance, or use of the dwelling*, including the care and supervision of children, or whose duties are personal and not in the course of the trade, business, profession, or occupation of the owner or occupant." (Italics added.)

*Scott*'s premise—by which it concluded that an injured worker (who was himself the unlicensed contractor in that case) was outside the workers' compensation system (at least for purposes of the homeowners' insurer's compensation liability)—was that section 3351, subdivision (d) cannot apply to a dwelling that cannot be occupied as a residence.[7] But that rationale cannot apply here, where Ibarra was living in the residence at the time of the injury, and the essence of the work was remodeling to an existing home then being used as a dwelling, as distinct from building a new home not yet occupied at the time of the injury.

What about—sans *Scott*—the more general question of whether Ibarra's project, a garage conversion, was just too uncasual to be "incidental to the ownership, maintenance or use of the dwelling"? That is a closer question than whether *Scott*'s ratio decidendi applies as a matter of precedent (which, as we just showed, it doesn't).

We know that section 3351, subdivision (d) covers plumbers and carpenters who make repairs. (See *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 14 [219 Cal.Rptr. 13, 706 P.2d 1146] (*Fund v. Board*) [observing in passing: "subdivision (d) is sufficiently broad as to encompass most situations where a homeowner or renter hires a plumber or carpenter to make repairs"].)

---

[7] *Scott* involved this twist: A workers' compensation judge had determined that the landowner was indeed an employer for workers' compensation purposes and made the landowners' homeowners' insurer responsible to pay compensation, *but* the appeals board overturned that ruling, finding the landowner *not* to be an employer of the injured worker, *but* the Court of Appeal later held that the landowner hadn't petitioned for reconsideration of the workers' compensation judge's ruling in time, so he was stuck with the ruling that he was an employee, *but* the court then determined that the board could still decide whether the *insurer* had to be responsible for compensation, and on that point the board got it right, holding the insurer was *not* responsible for the injury, because there was no house built yet. It is unclear from the *Scott* decision whether, in light of the Court of Appeal's decision to overturn the board's finding that the landowner *wasn't* an employer—in effect making him the injured workers' employer—in combination with its decision that the landowners' insurer wasn't responsible for compensation—the net effect was to stick the landowner with responsibility for compensation to an injured worker for which he had no insurance, all because of a missed deadline.

One therefore wonders: Was the compensation for the injured unlicensed contractor's knee in the *Scott* case ultimately paid for by the landowner's workers' compensation attorney's malpractice carrier for not having filed a timely petition for reconsideration from the workers' compensation judge's erroneous ruling?

But beyond that, the statute has been applied to a worker hired to repair a roof, which is often a major project, and certainly one of the more risky that a homeowner might undertake. (See *Cedillo, supra,* 106 Cal.App.4th at p. 230.)

It has also been applied to an unlicensed housepainter hired to paint a living room, dining room and possibly a kitchen. (See *California State Automobile Assn. Inter-Ins. Bureau v. Workers' Comp. Appeals Bd.* (2006) 137 Cal.App.4th 1040 [40 Cal.Rptr.3d 743] (*Auto Assn. v. Board*).) That sort of project usually falls into the category of home improvement rather than repairs.

And the statute has been applied to a worker hired by an unlicensed contractor to install new rain gutters on part of a condominium building. (*Heiman, supra,* 149 Cal.App.4th at p. 729.) Again, such a project may readily fall into home improvement rather than repairs, and has the uncasual element of some new construction.

■ We therefore divine no bright line between "repairs" and "remodeling" for purposes of section 3351, subdivision (d), and conclude that home improvement projects do indeed fall within section 3351, subdivision (d). The flip side of *Scott* is that when there *is* a building sufficiently completed so as to be occupied as a residence, the qualifying language should apply.

To the degree that this case presents a scenario at the edge between "incidental" and "not incidental" to homeownership, maintenance or use, the benefit of the doubt must go to the "incidental" side, that is, in favor of application of section 3351, subdivision (d). Two rules of liberal construction require this approach:

■ First, as a matter of workers' compensation law, there is a rule of liberal construction in favor of finding workers' compensation coverage. Section 3202 provides a rule of liberal construction in favor of coverage. It provides in its entirety: "This division and Division 5 (commencing with Section 6300) shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." One should note in this regard that the rule of liberal construction set forth in section 3202, referring to "this division" most certainly includes section 3351, subdivision (d)—the threshold for employee status for applicability of section 3352, subdivision (h)—but does *not* include section 2750.5, which is the provision that creates the employee-employer

relationship when an unlicensed contractor is involved. (As *Mendoza* points out, "Section 2750.5 is not a part of the workers' compensation law, but is contained in division 3 of the Labor Code . . . ." (*Mendoza, supra,* 142 Cal.App.4th at p. 77).)

■ Second, as a matter of *insurance* law, section 3351, subdivision (d) should be construed broadly so as to provide insured homeowners with maximum insurance protection against home improvement project accidents. (See *State Farm Fire & Casualty Co. v. Workers' Comp. Appeals Bd.* (1997) 16 Cal.4th 1187 [69 Cal.Rptr.2d 602, 947 P.2d 795] [construing compensation provisions liberally so as to find insurance coverage in favor of injured worker, even though injured worker lived in the household].) As Justice Croskey noted in *Heiman,* the statutes in the Insurance Code governing liability for injuries to residential employees are "interrelated and read together" with the workers' compensation statutes. (*Heiman, supra,* 149 Cal.App.4th at p. 743.) In this regard, section 3351, subdivision (d) *functions* as a key term in a statutorily required insuring clause. ■ And, of course, insuring clauses in insurance policies are construed broadly (e.g., *MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648 [3 Cal.Rptr.3d 228, 73 P.3d 1205]).[8]

Particularly instructive in this regard is the thinking of our high court in *Fund v. Board.* Back in 1985, the court confronted the problem the potentially burdensome effect created by an interpretation of section 2750.5 that made homeowners the employers of unlicensed contractors and their employees for purposes of the workers' compensation system. The court rejected the argument that such an interpretation would be overly burdensome, reasoning that because section 11590 of the Insurance Code requires all comprehensive personal liability policies to cover anyone within section 3351, subdivision (d), any actual burden on *insured* homeowners would therefore not be

---

[8] To be sure, when an insuring clause is authorized by statute, it is not necessarily "construed strictly against the insurer" but is construed to implement the intent of the Legislature. (*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 684 [274 Cal.Rptr. 387, 798 P.2d 1230] ["When a clause in an insurance policy is authorized by statute, it is deemed consistent with public policy as established by the Legislature. . . . In addition, the statute must be construed to implement the intent of the Legislature and should not be construed strictly against the insurer (unlike ambiguous or uncertain policy language)." (Citation omitted.)].) However, in this case, given that the Legislature has a policy of broad construction of workers' compensation coverage, and a further policy of encouraging all employers to have insurance (§ 3715; see *Auto Assn. v. Board, supra,* 137 Cal.App.4th at p. 1045 ["Section 3715 is part of the scheme for punishing uninsured employers and compensating their injured employees."]), the intent of the Legislature dovetails with the traditional rules of common law insurance interpretation.

"undue." A narrow construction of section 3351, subdivision (d), would essentially upset the balance the court perceived in construing section 2750.5 as it did, leaving more homeowners uninsured than the *Fund v. Board* court contemplated. (See *Fund v. Board, supra*, 40 Cal.3d at pp. 14–15.)

The nightmare scenario for a homeowner, of course, is to have purchased homeowners' liability insurance, to be held to be a worker's employer for purposes of workers' compensation by virtue of the operation of section 2750.5, and yet *not* to be covered for compensation owed because the project somehow fell outside of section 3351, subdivision (d). We are convinced that in construing section 2750.5 to apply to the workers' compensation system (and remember that the statute is not part of the workers' compensation statutes as such), our high court in *Fund v. Board* did not contemplate such an untoward result. The key language from that case is: "It is *only* when the homeowner or renter employs an unlicensed contractor more than the 52 hours required and *does not have homeowner's insurance* or other comprehensive personal liability insurance that the alleged undue burden is imposed." (*Fund v. Board, supra*, 40 Cal.3d at p. 14, italics added.) A broad view of section 3351, subdivision (d) is the clear underlying premise of such language.

There are no facts in this case to suggest that Ibarra's garage conversion was part of her occupation, trade, profession or business. Nothing in the record suggests she was planning on running a bed and breakfast. As in *Heiman*, she is a true owner, so section 3352, subdivision (h) applies because section 3351, subdivision (d) applies, and there is no workers' compensation exclusivity, at least as to Ibarra.

### B. Absence of Negligence

■ Even in cases where section 3352, subdivision (h) operates to take a case out of the workers' compensation system, a homeowner may still be sued in ordinary negligence. (*Mendoza, supra*, 142 Cal.App.4th at p. 79 ["Plaintiff contends that the trial court erred by granting the summary judgment motion because his exclusion from workers' compensation coverage under section 3352(h) does not bar him from suing in tort. Plaintiff is correct . . . ."].)

In such cases, the tort liability is common law negligence as distinct from strict liability. (*Ramirez, supra*, 44 Cal.4th at pp. 911–912 [upholding trial court's decision to instruct on ordinary negligence and to reject a negligence per se instruction based on violation of statute making it a misdemeanor to move any tool within six feet of a high voltage overhead power line].) California courts have consistently held that OSHA (Occupational Safety and

Health Act of 1970; 29 U.S.C. § 651 et seq.) (really Cal-OSHA (California Occupational Safety and Health Act of 1973; § 6300 et seq.), our regulations are stricter than the federal ones) was not meant to apply to homeowners, but to traditional places of industry and business. (*Fernandez v. Lawson* (2003) 31 Cal.4th 31, 38 [1 Cal.Rptr.3d 422, 71 P.3d 779] [holding the hirers of a noncommercial tree trimmer were not subject to OSHA ]; *Rosas v. Dishong* (1998) 67 Cal.App.4th 815, 826 [79 Cal.Rptr.2d 339] ["It is unlikely average homeowners expect that OSHA requirements would apply when they hire someone to trim a tree for their own personal benefit and not for a commercial purpose. . . . Moreover, homeowners are ill-equipped to understand or to comply with the specialized requirements of OSHA."].)

*Ramirez,* in this regard, applies a fortiori to this case. There a worker for an unlicensed tree trimmer accidentally touched his polesaw against a high voltage electrical line that was "openly visible to everyone" and was electrocuted. (*Ramirez, supra,* 44 Cal.4th at p. 913.) The high court affirmed the trial court's refusal to give a negligence per se jury instruction based on the worker having brought a power tool within six feet of a high voltage overhead power line. In particular, the *Ramirez* court rejected the Court of Appeal's "holding" that "effectively made these homeowners vicariously liable in tort" for the *worker's* violation of the statute (*id.* at p. 920), in the process noting that " 'one does not have a *legal* duty to avoid harming himself.' " (*Id.* at p. 919, original italics.)

We perceive *Ramirez,* in combination with the cases rejecting application of OSHA to homeowners, to mean that there must be some triable issues of ordinary negligence on Ibarra's part for Zaragoza to prevail. The undisputed evidence here, however, reveals none. Zaragoza was the sole person who placed, adjusted, and then climbed the ladder before he fell. There are no allegations that the ladder was defective.[9] Zaragoza simply engaged in a maneuver from a height of nine feet that any ordinary adult person would know posed significant risk. (See *Doyle v. Pacific Elec. Ry. Co.* (1936) 6 Cal.2d 550, 553 [59 P.2d 93] ["There is nothing uncommon about a ladder. They are present in practically every home or house, and the danger of falling from them is familiar to children as well as to adults."].)[10] Short of ordering Zaragoza not to get nine feet up on a ladder and try to pull a nail out of some drywall, there was nothing Ibarra could have done to prevent the accident.

---

[9] There is a disagreement in the papers as to who owned the ladder—Ibarra says it wasn't hers. We will assume, for the sake of argument that, since all conflicts and inferences are read in favor of the responding party on a summary judgment motion, it *was* hers. Even so, the "issue" of whose ladder it was is not material. There are no facts in the record suggesting it was defective.

[10] To the degree that *Doyle* stands for the idea that the ordinary obviousness of a danger precludes liability for attractive nuisances *to minors,* it was overruled in *King v. Lennen* (1959) 53 Cal.2d 340, 344 [1 Cal.Rptr. 665, 348 P.2d 98]. Nothing in this record suggests that Zaragoza is a minor.

## III. DISPOSITION

The judgment is affirmed. Respondent is to recover her costs on appeal.

Bedsworth, J., and O'Leary, J., concurred.

On June 30, 2009, the opinion was modified to read as printed above.