Filed 10/28/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TOMAS VEBR,<br><br>　　Plaintiff and Appellant,<br><br>　　　v.<br><br>GARY A. CULP et al.,<br><br>　　Defendants and Respondents. | G050730<br><br>(Super. Ct. No. 30-2013-00661944)<br><br>O P I N I O N |

　　　　　Appeal from a judgment of the Superior Court of Orange County, David T. McEachen, Judge.  Affirmed.

　　　　　Innabi Law Group, Abdalla J. Innabi and Amer Innabi for Plaintiff and Appellant.

　　　　　Michael Maguire & Associates and Paul Kevin Wood for Defendants and Respondents.

INTRODUCTION

Plaintiff Tomas Vebr was employed by a painting contractor which contracted with defendants Gary A. Culp and Georgia M. Culp[1] to paint the interior of their home. An hour into working in the Culps' home, Vebr fell 12 to 15 feet from an extension ladder provided by the painting contractor and was injured. Vebr sued the Culps for negligence and premises liability based on allegations that his fellow painters were negligent. The trial court granted the Culps' motion for summary judgment. We affirm.

The painting contractor claimed a no-employee exemption from the workers' compensation insurance requirements, but hired employees, including Vebr, to paint the Culps' house. Section 7125.2, subdivision (a)(2) of the Business and Professions Code provides that a contractor's license is automatically suspended by operation of law as of the date the contractor is required to obtain workers' compensation insurance but fails to do so. (*Wright v. Issak* (2007) 149 Cal.App.4th 1116, 1121.) Because the painting contractor failed to obtain the required workers' compensation insurance after it hired employees, which resulted in the immediate and automatic suspension of its contractor's license, we refer to the painting contractor as being unlicensed and uninsured throughout this opinion.

In light of the contractor's unlicensed and uninsured status, we assume, without deciding, that the Culps were potentially liable in tort to Vebr for their own direct negligence and also as Vebr's employer, within the meaning of Labor Code section 2750.5, and through the doctrine of respondeat superior. (All further statutory references are to the Labor Code unless otherwise specified.) Nevertheless, there are no triable issues of material fact. Vebr testified at his deposition that the ladder from which he fell did not appear to have anything wrong with it and he did not know why he fell.

---

[1] We refer to Gary Culp and Georgia Culp collectively as the Culps, and individually by their first names for the purpose of clarity. We intend no disrespect.

There is no evidence showing that anyone, whether the Culps or Vebr's fellow painters, did anything or failed to do anything that caused Vebr to fall off the ladder. No evidence suggests the existence of any hazardous condition at the Culps' residence, much less one that had any causal connection to the fall. In light of the absence of a triable issue of material fact as to either of Vebr's claims, the trial court did not err by granting the Culps' motion for summary judgment.

SUMMARY OF THE FACTS

In September 2011, the Culps owned a home in the City of Orange. They hired OC Wide Painting, a business owned by Ondrej Kubacka, to paint the interior of their home. The Culps and OC Wide Painting entered into a "Home Improvement Contract" (the contract) which included OC Wide Painting's license number and the statement that OC Wide Painting had workers' compensation insurance, or would acquire it. Gary confirmed online that OC Wide Painting had a valid license; he was also told by Kubacka that he was licensed. Gary also checked OC Wide Painting's references.

As Gary was not a painter, and the project to paint the interior of the Culps' residence was beyond his level of expertise, he only told Kubacka which surfaces inside the residence he wished to have painted; he did not tell the painters how to paint or provide Kubacka with details on how the work was to be done. OC Wide Painting provided the materials for the job, including the paint, ladders, and other tools; the Culps provided a portable bathroom and an interior cover for the piano. Kubacka was often at the residence and did some of the painting himself. He retained other painters, including a painter named "Adrian."

Vebr had been a painter since 2000. He did not have a license, but he had done many projects over the years and had experience painting high ceilings. He learned about the job with OC Wide Painting through Adrian, who was his friend. He was hired by OC Wide Painting to help paint a ceiling in the Culps' home. Vebr anticipated the job would take him one day to complete, for which he would be paid $150.

3

At 8:30 a.m. on September 28, 2011, Vebr arrived at the Culps' residence to begin work on painting an 18-foot-high ceiling. Vebr ascended an A-frame extension ladder to remove trim and bulbs in canned lights from a portion of the ceiling, cover the lights, and spray that portion of the ceiling. He thereafter moved the ladder to repeat the process to paint other portions of the ceiling. Vebr was assisted by two helpers, "Peter" and "Filip," whose job was to secure the ladder, which rested on a concrete floor.

About an hour after he had begun work, Vebr was two or three rungs below the top of the ladder, trying to remove a protective frame and a bulb from a canned light, when he fell from a height of 12 to 15 feet. He did not know what caused the ladder to tip over, and stated that the cause of his fall was "[b]asically physics." He did not know what Peter or Filip was doing when the ladder started to tip; the ladder was not touching a wall when Vebr fell.

Vebr did not believe there was anything wrong with the ladder that caused him to fall. Vebr had not asked for any equipment, which was not provided to him, that would have made his job easier.

The Culps were insured under a homeowners insurance policy which provided workers' compensation coverage for residence employees; Vebr did not qualify as a residence employee under that coverage.

Vebr produced additional evidence in support of his opposition to the motion for summary judgment, which included evidence showing OC Wide Painting was a licensed class C33 painting contractor which certified to the California Contractors State License Board that it had no employees and was therefore exempt from having workers' compensation insurance. Consequently, OC Wide Painting did not provide the Culps with written insurance declaration pages of coverage pursuant to the contract, as it did not have either workers' compensation or general liability insurance at the time of the accident.

4

Before signing the contract, Gary had reviewed the California Contractors State License Board's "Contractor's License Detail," which was posted online for OC Wide Painting and stated: "This License is exempt from workers compensation insurance; they certified that they have no employees at this time." (Boldface omitted.) The Culps did not halt the project "despite the fact that other individuals were working in conjunction and coordination of [OC Wide Painting] to paint the subject property without worker's compensation insurance from approximately September 26, 2011 to October 18, 2011."

PROCEDURAL HISTORY

In July 2013, Vebr filed a form complaint, asserting claims for general negligence and premises liability against the Culps and OC Wide Painting. As to each claim, the complaint alleged that on September 28, 2011, Vebr "was seriously injured after falling several feet from a ladder on [the Culps'] property . . . during the course and scope of his employment for them while employees for Defendant OC Wide Painting negligently secured the ladder which was unsuitable for the job. As a result, [Vebr] sustained personal injuries to various parts of his body which required medical treatment and surgery."

As to Vebr's premises liability claim, the complaint further alleged the Culps and OC Wide Painting (1) negligently owned, maintained, managed, and operated the described premises; (2) willfully or maliciously failed to guard or warn against a dangerous condition, use, structure, or activity; and (3) "were the agents and employees of the other defendants and acted within the scope of the agency." Vebr sought, inter alia, damages for lost wages, hospital and medical expenses, and loss of earning capacity.

The Culps filed a motion for summary judgment on the ground there were no facts to show they were liable for Vebr's injuries. The motion stated: "Specifically, there are no facts to establish that [the Culps] breached any duty owed to [Vebr], that the premises where this incident occurred were dangerous or defective, or that [the Culps']

5

actions were the legal or proximate cause of [Vebr]'s injuries. [¶] Moreover, the Culps were not the statutory employers of either OC Wide Painting or [Vebr]. Even if [the Culps] were statutory employers, at most this would confer on [Vebr] the right to bring a tort action against them. Since the Culps were not negligent in this matter, and their actions were not the cause of [Vebr]'s injuries, they are not liable to [Vebr] in tort."

The trial court granted the motion for summary judgment. The court's three-page minute order was thorough and analytically sound. Judgment was entered in favor of the Culps and against Vebr. Vebr appealed.

DISCUSSION

I.

STANDARD OF REVIEW

We review orders granting summary judgment de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 35.) A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish, a prima facie case . . . ." [Citation.]' [Citation.] '[O]nce a moving defendant has "shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established," the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." [Citations.]' [Citation.]" (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.) We "'"liberally construe the evidence in support of the party opposing

summary judgment and resolve doubts concerning the evidence in favor of that party.""" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)

II.

### THERE WERE NO TRIABLE ISSUE OF MATERIAL FACT EXISTS REGARDING WHETHER THE CULPS WERE LIABLE TO VEBR FOR GENERAL NEGLIGENCE OR BASED ON A THEORY OF PREMISES LIABILITY.

A.

*General Legal Principles Related to Liability for the Injured Worker
of an Unlicensed and Uninsured Contractor*

Vebr's challenge to the grant of summary judgment depends in large part on his argument that, in light of OC Wide Painting's unlicensed and uninsured status at the time of the accident, the Culps are liable in tort to Vebr not only for their direct negligence, but also as the employer of Vebr and the other painters at the scene of the accident. We therefore begin our analysis by summarizing general legal principles regarding the significance of an independent contractor's licensed and insured status to a hiring landowner's potential liability.

Ordinarily, when an employee sustains a worksite injury, the exclusive remedy against his or her employer is provided by the workers' compensation law, and the employer is immune from a suit for damages. (§§ 3600, 3601, 3602, subd. (a).) But if the employer has not secured workers' compensation coverage or its equivalent, an injured employee may bring a civil suit against his or her employer. (§ 3706; *Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 982-987.) If the employee establishes that he or she was injured in the course and scope of his or her employment, section 3708 creates a rebuttable presumption that an uninsured employer was negligent and the employer is precluded from claiming comparative fault or assumption of risk as a defense. (*Huang v. L.A. Haute* (2003) 106 Cal.App.4th 284, 289-291.)

7

When an employee of a contractor is injured, and the contractor is unlicensed and uninsured at the time of injury, the injured employee's recourse may be against not only the contractor, but also against the landowner who hired the contractor, as an additional employer. "Among the legal consequences of hiring an unlicensed contractor who is injured or whose employee is injured performing the work is that different employment relationships may arise with respect to 'employer' liability for workers' compensation or tort damages." (*Heiman v. Workers' Comp. Appeals Bd.* (2007) 149 Cal.App.4th 724, 734.) The injured employee may seek workers' compensation benefits from the landowner through a general liability policy or homeowners insurance policy.

B.

*Vebr Did Not Seek Workers' Compensation Benefits from the Culps or*
*Penalties for Their Failure to Provide Them.*

Vebr does not argue the Culps were required to provide him workers' compensation benefits or owed him any related penalties. The undisputed facts show that pursuant to section 3352, subdivision (h), Vebr was unqualified for workers' compensation benefits from the Culps because he had not worked 52 hours or earned $100 within the 90 days before the accident. "The law is now well settled that a worker hired by an unlicensed contractor who in turn has been hired by a homeowner does *not* come within the workers' compensation system, despite the contractor's unlicensed status, when the worker has not worked 52 hours *or* earned $100 within 90 days prior to the date of the injury specified in section 3352, subdivision (h)." (*Zaragoza v. Ibarra* (2009) 174 Cal.App.4th 1012, 1016, first italics added (*Zaragoza*), citing *Ramirez v. Nelson* (2008) 44 Cal.4th 908, 914 (*Ramirez*).) Vebr acknowledges in his opening brief that he is excluded from workers' compensation coverage under section 3352, subdivision (h) "because he was employed less than 52 hours in the 90 calendar days prior to the injury."

8

*Vebr's Claims Were Based on Allegations That the Culps Were Vebr's Employer Under the Doctrine of Respondeat Superior and Section 2750.5.*

Vebr did not allege in the complaint that the Culps engaged in any form of direct negligence. (*Zaragoza*, *supra*, 174 Cal.App.4th at p. 1022 ["Even in cases where section 3352, subdivision (h) operates to take a case out of the workers' compensation system, a homeowner may still be sued in ordinary negligence."]; *Mendoza v. Brodeur* (2006) 142 Cal.App.4th 72, 79 (*Mendoza*) [the trial court erred by granting the summary judgment motion on the ground the plaintiff's exclusion from workers' compensation coverage under section 3352, subdivision (h) barred him from suing in tort].)

In any event, there is no evidence in the appellate record that shows the Culps directly engaged in any negligent act. The evidence shows Vebr fell from a ladder provided by OC Wide Painting, not the Culps. Neither of the Culps was present at the time of the accident.[2] There is no evidence that the Culps' residence had any hazardous condition, much less one that had any causal connection to Vebr's accident. Thus, no triable issue of material fact exists regarding any liability for direct tortious activity.

Instead, Vebr sought to hold the Culps liable in tort under the theory of respondeat superior as Vebr's employer pursuant to section 2750.5, in light of OC Wide Painting's unlicensed and uninsured status.[3] Section 2750.5 provides that a worker who

---

[2] At the time of the accident, Gary was not at home. Georgia was at home but not in the room where the accident occurred.

[3] Section 2750.5 provides in part: "There is a rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, or who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor." Section 2750.5 identifies a list of factors relevant to determining independent contractor status and also states, "this presumption is a supplement to the existing statutory definitions of employee and independent contractor, and is not intended to lessen the coverage of employees under Division 4 and Division 5."

performs services for which a license is required but lacks such a license is rebuttably presumed to be an employee, not an independent contractor.

The potential scope of a homeowner's tort liability to an injured employee of an unlicensed contractor whom the homeowner hired was addressed by the California Supreme Court in *Ramirez*, *supra*, 44 Cal.4th at page 916, as follows: "The question whether an unlicensed contractor's worker must be deemed a homeowner-hirer's employee under Labor Code section 2750.5 for purposes of tort liability is neither an easy nor settled one. This court in *State Compensation* [*Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 15] construed the penultimate paragraph of section 2750.5 to mean that contractors injured on the job, who prove to be unlicensed, cannot be independent contractors in the eyes of the law, and are instead deemed employees of the party who hired them by operation of law. [Citation.] But that holding was reached in the specific context of determining whether, for policy reasons, an unlicensed contractor hired to remodel a homeowner's house who became injured on the job should be deemed the homeowner's employee at law for purposes of rendering him eligible for workers' compensation benefits under the homeowner's insurance policy. [Citation.] The homeowner's potential exposure to tort liability for the contractor's injuries was neither in issue nor considered in *State Compensation*. Nor was a homeowner's liability for injury to a worker in an unlicensed contractor's work crew an issue considered in *State Compensation*." (Fn. omitted.)[4]

_____

[4] The California Supreme Court in *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5 explained that a homeowner who hired an unlicensed contractor, who was injured when he fell from a scaffold, was required to assume the status of "employer" for workers' compensation liability because section 2750.5 requires an independent contractor to be licensed as a matter of law. The penultimate paragraph of section 2750.5 provides, "'any person performing any function or activity for which a [contractor's] license is required . . . shall hold a valid contractors' license as a condition of having independent contractor status.'" (*Fernandez v. Lawson* (2003) 31 Cal.4th 31, 40 (conc. opn. of Brown, J.).) It is well established that the language of the statute "creates a rebuttable presumption affecting the burden of proof

10

The issue of a homeowner's potential exposure to tort liability for a contractor's injuries or the injuries suffered by the contractor's employees was not decided in *Ramirez* and has not yet been resolved by the California Supreme Court. (See *Cortez v. Abich* (2011) 51 Cal.4th 285, 291 ["Whether unlicensed contractors or their workers may or must be deemed the homeowners' employees under section 2750.5, either for purposes of tort liability generally or with regard to Cal-OSHA [(California Occupational Safety and Health Act of 1973) (§ 6300 et seq.)] specifically, are difficult and unsettled questions in this court. [Citations.] Defendants, however, neglected to seek review of these issues, so we do not resolve them here."].)

Before *Ramirez* and *Cortez v. Abich* were decided, the appellate court in *Mendoza*, *supra*, 142 Cal.App.4th at page 75, held that under section 2750.5, the plaintiff, an unlicensed roofer, was the defendant homeowner's employee for purposes of tort liability.

D.

*Even Assuming the Culps May Be Potentially Held Liable in Tort to Vebr*
*as His Employer Under the Doctrine of Respondeat Superior, No Triable*
*Issue of Material Fact Exists as to Either of Vebr's Claims.*

We do not need to decide whether the Culps may be potentially held liable in tort to Vebr as his employer under the doctrine of respondeat superior because, even assuming the Culps may be held so liable, no triable issue of material fact exists regarding such liability. "'Under the theory of respondeat superior, employers are vicariously liable for tortious acts committed by employees during the course and scope of their employment.'" (*Moradi v. Marsh USA, Inc.* (2013) 219 Cal.App.4th 886, 894.)[5]

_____

that a worker performing services for which a contractor's license is required, or who is performing such services for a person who is required to obtain such a license, is an employee rather than an independent contractor." (*Ibid.* (conc. opn. of Brown, J.).)

[5] "'This liability is based *not on* the employer's fault, but on public policies concerning who should bear the risk of harm created by the employer's enterprise. . . .' [Citation.] [¶] 'In light of this purpose, the determining factor in ascertaining whether an

11

The complaint alleged Vebr's claims for general negligence and premises liability were solely based on "employees for Defendant OC Wide Painting negligently secur[ing] the ladder which was unsuitable for the job." There is no evidence showing that any of OC Wide Painting's employees negligently secured the ladder or the ladder was unsuitable for the job. Vebr's deposition testimony established he was assisted by "two helpers," Peter and Filip, whose job was to secure the ladder which rested on a concrete floor. The record is devoid of evidence showing how Vebr fell. There is no evidence Peter or Filip left his post, or otherwise failed to do what he was supposed to do with the ladder. Vebr testified at his deposition that he did not believe there was anything wrong with the ladder itself and he did not know why the ladder fell. He testified his fall was "[b]asically physics." Vebr has never identified any hazardous condition at the residence, much less one that played any role in the accident.

Vebr argues the rebuttable presumption of negligence against employers, which is codified at section 3708, applied to the Culps as Vebr's statutory employer under section 2750.5. Therefore, Vebr's argument continues, it was not his burden in opposing the motion for summary judgment to produce evidence showing the existence of a triable issue of material fact as to his negligence or premises liability claims, but it was the Culps' burden to rebut the presumption of negligence. Vebr's argument fails because the language of section 3708 provides that the presumption does not apply to circumstances such as those presented in this case.

---

employee's act falls within the scope of his employment for respondeat superior liability is not whether the act was authorized by the employer, benefited the employer, or was performed specifically for the purpose of fulfilling the employee's job responsibilities. [Citation.] Rather, the question is whether the risk of such an act is typical of or broadly incidental to the employer's enterprise. . . .' [Citation.] [¶] "'Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when 'the facts are undisputed and no conflicting inferences are possible.'" [Citation.]"' (*Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 367-368.)

12

Section 3708 provides: "In such action it is presumed that the injury to the employee was a direct result and grew out of the negligence of the employer, and the burden of proof is upon the employer, to rebut the presumption of negligence. It is not a defense to the employer that the employee was guilty of contributory negligence, or assumed the risk of the hazard complained of, or that the injury was caused by the negligence of a fellow servant. No contract or regulation shall restore to the employer any of the foregoing defenses. [¶] *This section shall not apply to any employer of an employee, as defined in subdivision (d) of Section 3351, with respect to such employee*, but shall apply to employers of employees described in subdivision (b) of Section 3715, with respect to such employees." (Italics added.)[6]

Section 3351, subdivision (d) defines the term "'[e]mployee'" as including "any person employed by the owner or occupant of a residential dwelling whose duties are incidental to the ownership, maintenance, or use of the dwelling, including the care

---

[6] Here, section 3715, subdivision (b) did not apply to Vebr because it is undisputed Vebr testified that he was hired to spray paint a high ceiling and that "[i]t was supposed to be work for one day." Section 3715, subdivision (b) provides in relevant part: "Notwithstanding this section or any other provision of this chapter except Section 3708, *any person* described in subdivision (d) of Section 3351 who is (1) engaged in household domestic service who is employed by one employer for over 52 hours per week, (2) engaged as a part-time gardener in connection with a private dwelling, if the number of hours devoted to the gardening work for any individual regularly exceeds 44 hours per month, or (3) engaged in casual employment *where the work contemplated is to be completed in not less than 10 working days*, without regard to the number of persons employed, and where the total labor cost of the work is not less than one hundred dollars ($100) (which amount shall not include charges other than for personal services), shall be entitled, in addition to proceeding against his or her employer by civil action in the courts as provided in Section 3706, to file his or her application with the appeals board for compensation. The appeals board shall hear and determine the application for compensation in like manner as in other claims, and shall make the award to the claimant as he or she would be entitled to receive if the person's employer had secured the payment of compensation as required, and the employer shall pay the award in the manner and amount fixed thereby, or shall furnish to the appeals board a bond, in any amount and with any sureties as the appeals board requires, to pay the employee the award in the manner and amount fixed thereby." (Italics added.)

13

and supervision of children, or whose duties are personal and not in the course of the trade, business, profession, or occupation of the owner or occupant."  Section 3351, subdivision (d) "includes in its definition of an employee persons who are hired to make repairs on a residence" (*Cedillo v. Workers' Comp. Appeals Bd.* (2003) 106 Cal.App.4th 227, 235), such as plumbers, carpenters, and workers hired to repair a roof (*Zaragoza*, *supra*, 174 Cal.App.4th at pp. 1019-1020), and "has also been applied to an unlicensed housepainter hired to paint a living room, dining room and possibly a kitchen" (*Zaragoza*, *supra*, at p. 1020).

In *Zaragoza*, *supra*, 174 Cal.App.4th at page 1020, a panel of this court held there is "no bright line between 'repairs' and 'remodeling' for purposes of section 3351, subdivision (d), and conclude[d] that home improvement projects do indeed fall within section 3351, subdivision (d)."  Vebr, as an employee hired to paint the ceiling of a home, readily falls within the description of the class of employees who are hired to repair or remodel a residence, to come within the section 3351, subdivision (d) exception of section 3708.

In his opening brief, Vebr argues the instant matter is most analogous to *Mendoza*, *supra*, 142 Cal.App.4th 72, in which the appellate court held that pursuant to section 2750.5, a homeowner was an employer of an unlicensed roofer and may be held liable as such in tort.  *Mendoza* does not assist Vebr's case because we have assumed for purposes of our analysis that Vebr is the Culps' employee and may sue the Culps as his employer in tort.

Vebr also argues that *Mendoza* supports his position that "the trial court erred by placing the initial burden of proof on [Vebr] to proving negligence contrary to section 3708."  It does not.

In *Mendoza*, *supra*, 142 Cal.App.4th at page 78, the defendant homeowner moved for summary judgment on "[t]he sole legal ground" that section 3352, subdivision (h) "precluded a finding that plaintiff was defendant's employee—because he

14

worked less than 52 hours."  The appellate court concluded the trial court erred by granting the motion because the plaintiff's exclusion from workers' compensation coverage under section 3352, subdivision (h) would not automatically bar him from suing in tort as a presumed employee under section 2750.5.  (*Mendoza*, *supra*, at p. 79.)

The court held the trial court further erred by concluding "that defendant's evidence on control of the worksite was sufficient to shift the burden to plaintiff to show a triable issue of fact."  (*Mendoza*, *supra*, 142 Cal.App.4th at p. 79.)  The appellate court explained:  "No evidentiary burden shifted to plaintiff.  Virtually the entire argument of defendant's motion was the legal impact of section 3352(h)—which, of course, overlooked the impact of section 2750.5.  Defendant only noted in passing, and at the conclusion of his motion memorandum, that '[t]he evidence also establishes that no act or omission on the part of Defendant caused Plaintiff's injury.'  The evidence did no such thing, because there *was* no evidence put forward by defendant regarding the exact circumstances of the accident and injury.  [¶] Plaintiff had nothing to refute.  The evidentiary issue of fault—including violation of duty, negligence, and causation— simply was not properly addressed by the motion for summary judgment.  The only evidence regarding the actual injury involved only the question of control of the worksite, not fault—and even that evidence, as defendant concedes, raises a triable issue of fact." (*Id.* at p. 81.)  Section 3708 was not cited, much less analyzed, by the appellate court in *Mendoza*.

Vebr also argues that the trial court improperly denied him the opportunity to prove the Culps were negligent under the doctrine of res ipsa loquitur.  "In California, the doctrine of res ipsa loquitur is defined by statute as 'a presumption affecting the burden of producing evidence.'  (Evid. Code, § 646, subd. (b).)  The presumption arises when the evidence satisfies three conditions:  '"(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must

15

not have been due to any voluntary action or contribution on the part of the plaintiff."'"" (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 825-826.)

Here, the undisputed facts show the cause of Vebr's fall is a mystery. There is no evidence showing what had occurred or that Vebr was free from negligence himself. There is no evidence, for example, that at the time of the fall, he was holding on the ladder with two hands and did not cause the fall himself by losing his balance. On this record, there is no reasonable and logical inference that Peter, Filip, or anyone else present in the residence at the time of the accident, was negligent. Someone might have been negligent, but we do not and likely never will know whether that was the case. The trial court did not err by concluding that the evidence before the court did not show all three conditions of the res ipsa loquitur presumption were satisfied.

## DISPOSITION

The judgment is affirmed. Respondents shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.


16