Filed 8/22/16  Zarum v. Hoag Memorial Hospital CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LORIE ANNE GUNDERSON ZARUM, | |
| Plaintiff and Appellant, | G050952 |
| v. | (Super. Ct. No. 30-2013-00657603) |
| HOAG MEMORIAL HOSPITAL PRESBYTERIAN et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

Lorie Anne Gunderson Zarum, in pro. per., for Plaintiff and Appellant.

Doyle, Schafer McMahon, Joneis M. Phan for Defendant and Respondent Hoag Memorial Hospital Presbyterian.

Doyle, Schafer McMahon, Terrence J. Schafer and Nazanin Houshyar for Defendant and Respondent Andreea Nanci.

\*          \*          \*

Plaintiff Lorie Anne Gunderson Zarum (Zarum) filed a wrongful death medical malpractice complaint alleging oncologist Andreea Nanci and Hoag Memorial Hospital Presbyterian (collectively defendants) negligently caused her 82-year-old father's death.  The trial court granted defendants' motions for summary judgment because the applicable statute of limitations had expired.  Zarum appeals.  For the reasons expressed below, we will affirm.

I

FACTS AND PROCEDURAL HISTORY

On June 24, 2013, Zarum filed a wrongful death medical malpractice complaint, as amended in January and March 2014, alleging defendants negligently caused the death of her father, decedent Theodore Lee Gunderson.  Defendants filed general denials and raised multiple affirmative defenses, including the statute of limitations.

In November 2013, defendants moved for summary judgment.  Among other things, defendants asserted the applicable statute of limitations barred Zarum's action.[1]

According to a defense expert who reviewed the medical records, Gunderson, age 80, was diagnosed with bladder cancer, specifically invasive papillary

---

[1]     The parties filed separate summary judgment motions in the trial court raising the statute of limitations issue.  (See *Village Nurseries, L.P. v. Greenbaum* (2002) 101 Cal.App.4th 26 [section 437c requires each party moving for summary judgment to file a separate statement].)  In her summary judgment motion, Nanci also asserted she did not cause Gunderson's death.  In its summary judgment motion, Hoag also claimed it had no agency relationship with Nanci.  Because the trial court did not rule on these issues, we need not address them.  On appeal, Hoag moves to join in Nanci's respondent's brief.  We grant the motion.  (Cal. Rules of Court, rule 8.200(a)(5) ["Instead of filing a brief, or as part of its brief, a party may join in or adopt by reference all or part of a brief in the same or a related appeal"].)

transitional cell carcinoma, in October 2009. He had a "tumor grade of 3 of 3" and "widespread invasion of the lamina propria, invasion of the muscularis propria, and possible lymphovascular invasion."

Gunderson initially refused conventional cancer treatment, but in March 2010, after experiencing problems, he underwent a cystoscopy (examination of the interior of the bladder), a transurethral resection (a surgical procedure used to diagnose bladder cancer and to remove cancerous tissue), and a bladder biopsy. In April 2010, he received a cystectomy (bladder removal). "Pathology confirmed invasive, high grade, poorly differentiated urothelial carcinoma and prostatic adenocarcinoma."

An October 2010 CT scan revealed hydronephrosis (kidney swelling), mildly enlarged retroperitoneal lymph nodes, and cystic masses on the liver and near the pancreas. PET and CT scans in December 2010 were "consistent with interval progression of metastatic disease in the liver and retroperitoneum." A January 2011 biopsy of a lymph node revealed metastatic carcinoma consistent with the primary urothelial carcinoma.

Gunderson underwent a course of chemotherapy in February 2011. Side effects precluded continued treatment.

A March 2011 PET scan showed increased metabolic activity in various areas in comparison to the December 2010 PET scan. Gunderson underwent additional treatment in April 2011. He received an opinion he had systemic disease.

In late May 2011, Gunderson went to an emergency room because of blood in his urine. He stated he did not want chemotherapy. A CT scan confirmed the presence of a large mass on the neobladder, severely enlarged lymph nodes, worsened liver metastases, kidney swelling, and a new nodule on his right lung. Gunderson declined palliative radiation therapy.

Gunderson came to Hoag on June 8, 2011, because of lower extremity swelling. A physician believed it was related to the underlying malignancy and possible

3

compression on his veins by a pelvic mass. A CT scan showed severe and extensive metastatic disease (nodules, masses, enlargement) involving the lungs, lymph nodes and liver. Gunderson's internist, Kenneth Su, recommended chemotherapy and sought a consultation from Nanci. Nanci recommended a liver biopsy to determine whether a lesion was related to the urothelial cancer or a new malignancy. After discussions between multiple physicians and Gunderson and Zarum, Gunderson decided to continue holistic treatment. Nanci would follow the case and Gunderson would undergo a biopsy and chemotherapy when his condition worsened. Gunderson left Hoag on June 13, 2011.

Gunderson returned to Hoag two days later with worsening edema. Nanci advised Su there was no new oncological treatment to offer without a biopsy. Gunderson's holistic health physician stated his goal was to improve Gunderson's nutrition but not necessarily prolong his life. A nephrologist recommended a low grade diuretic to address the edema. Gunderson was released on June 16, 2016.

Gunderson returned to Hoag eight days later, on June 24, with complaints of rectal bleeding and whole body pain. Nanci discussed with Gunderson and Zarum the option of performing a liver biopsy. Gunderson signed a consent form for a percutaneous liver mass biopsy. The biopsy revealed metastatic carcinoma compatible with the urothelial primary tumor. An abdominal CT scan performed June 25 revealed multiple metastatic lesions. A whole body bone scan and spinal X-rays performed two days later were consistent with metastatic disease. Nanci explained to Gunderson he was not a candidate for chemotherapy.

Hoag readmitted Gunderson on July 3. A palliative physician felt he was at high risk of entering the end stages of anorexia cachexia syndrome (cancer-related wasting disorder). The family agreed to a "do not resuscitate" order and hospice. Gunderson was transitioned to a skilled nursing facility under hospice care. He died July 31, 2011.

4

The autopsy performed October 14, 2011 confirmed widely metastatic carcinoma with tumors embedded within numerous organs, including the kidneys, liver, lungs, pancreas, and extensive lymph node involvement. The defense expert stated "There is no scientific foundation for the claim the June 24, 2011 liver biopsy worsened [Gunderson's] already extensive and systemic cancer."

In August 2014, the trial court granted respondents' motions for summary judgment on the grounds Zarum did not file her complaint within the applicable statute of limitations period. (Code Civ. Proc., § 340.5.) This appeal followed.[2]

## II

### DISCUSSION

A.    *Standard of Review*

"We review orders granting summary judgment de novo." (*Vebr v. Culp* (2015) 241 Cal.App.4th 1044, 1050.) A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish, a prima facie case. . . ." [Citation.]' [Citation.] '[O]nce a moving defendant has "shown that one or more elements of the cause of action, even if

_____

[2]    Zarum's notice of appeal reflects she appealed from the judgment after an order granting the summary judgment motion, and a "judgement after order denying motion for reconsideration." As the trial court found, Zarum's motion filed September 12, 2014, for reconsideration of the August 15, 2014 summary judgment order, which Nanci served on August 15, 2014, was untimely. (Code Civ. Proc., § 1008 [application for reconsideration must be made within 10 days after service upon the party of written notice of entry of the order].)

not separately pleaded, cannot be established," the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action. . . ." [Citations.]' [Citation.]" (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.) On appeal, we scrutinize the record for triable issues of fact, "considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334; *NBCUniversal Media, LLC v. Superior Court* (2014) 225 Cal.App.4th 1222, 1231 [summary judgment proper where uncontradicted facts established through discovery show statute of limitations has run].)

B.      *Code of Civil Procedure Section 340.5*

Code of Civil Procedure section 340.5 provides in relevant part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."

"Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . [T]he limitations period begins once the plaintiff ""'has notice or information of circumstances to put a reasonable person *on inquiry* . . . .'"" [Citations.] A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her."

6

(*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111; *Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391 [discovery rule contains two alternate tests for triggering limitations period, a subjective test requiring actual suspicion by the plaintiff the injury was caused by wrongdoing and an objective test requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing; the first to occur under these two tests begins the limitations period].)

The complaint, as amended March 28, 2014, alleged Zarum and Gunderson advised Nanci on June 24, 2011, that no biopsy or other procedure or treatment was to be performed. Zarum called on June 25, 2011, and found out the liver biopsy had been performed with Gunderson's consent only. Zarum alleged Nanci did not first obtain medical records from Cedars-Sinai, and used "cruel and unusual" scare tactics to intimidate Gunderson into consenting to the biopsy when family members were not present, and after he had ingested pain medications. Zarum claimed the biopsy was dangerous and useless and risked "a rapid spread of cancer through the liver blood supply."

On June 26, 2011, Zarum confronted Nanci about the biopsy. Defendants refused to provide any information about Gunderson, stating he was making his own health care decisions.

Zarum complained Hoag and Nanci did not honor Gunderson's health care directive, and Nanci "adamantly wanted to treat" Gunderson for "'colon cancer' in [Gunderson's] liver" and administer chemotherapy. According to Zarum, the autopsy records revealed "the bladder cancer originally contained within a small area of the liver and small spot in the lungs . . . spread like wildfire through [Gunderson's] entire body." She attributed the spread to the biopsy.

Zarum's allegations and responses to discovery (special interrogatories and deposition testimony) reflected she opposed the biopsy, and believed it would cause the cancer to spread. She learned about the allegedly improper biopsy on June 25, 2011. She

7

received the autopsy report in November 2011, which apparently confirmed her suspicions. She identified "the approximate date upon which [she] first suspected that the medical care provided to" Gunderson by Nanci was negligent and "caused his subsequent death" as the date she "received the autopsy report indicating cancer spread throughout [Gunderson's] body" and asserted "the biopsy caused [his] wrongful death." She also stated that November 2011 was the "approximate date upon which she [was] first advised by anyone that any aspect of the care rendered to" her father by Nanci was negligent. She explained this was "[s]ometime . . . after receiving the autopsy report in the mail."

In her opposition to the motion for summary judgment, Zarum asserted she had three years from the date of the liver biopsy (June 24 or June 25, 2011) to file suit. This ignores Code of Civil Procedure section 340.5's discovery provision. The trial court did not err in concluding the statute of limitations began to run no later than the date Zarum received the autopsy report. By this point, she held an actual suspicion medical negligence caused her father's death. Because Zarum did not file her complaint within a year of this date, her claim was time-barred.

## III

### DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


FYBEL, J.